IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OBENTO LIMITED (d/b/a Chinese Menu Online), a Hong Kong business entity; P & F, INC. d/b/a HAPPINESS RESTAURANT, on behalf of itself and all others similarly situated, <br><br>    Plaintiffs, <br><br>v. <br><br>QMENU, INC., a Georgia corporation, <br><br>    Defendants. | Case No. 1:20-cv-07391 <br> Judge Jorge L. Alonso <br> Magistrate Judge Sheila M. Finnegan |

## DEFENDANT QMENU, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER VENUE FOR *FORUM NON CONVENIENS*

Defendant QMENU, INC. ("qMenu") submits this Memorandum of Law in support of its Motion to Transfer this action filed by Plaintiffs OBENTO LIMITED, d/b/a Chinese Menu Online ("CMO) and P&F INC., d/b/a Happiness Restaurant ("P&F") to the United States District Court for the Northern District of Georgia, Atlanta Division pursuant to 28 U.S.C. §1404(a) for *forum non conveniens*, and states as follows:

**I. Introduction**

Plaintiff CMO and its members are based out of and operate from Hong Kong but target and obtain U.S. based business by competing with entities such as Gwinnett County, Georgia based QMenu. CMO, a direct competitor of Defendant QMenu, has brought this action apparently seeking to do via the court system what it could not do in the free market. QMenu is a small business with limited resources and its competitor, CMO, is trying to crush qMenu by forcing it into expensive litigation in Illinois, even though CMO has absolutely no operations or personnel in Illinois (or elsewhere in the U.S.), and, as noted in qMenu's contemporaneously

filed Motion to Dismiss and Motion to Strike Claims for Class Relief, fail to state valid claims for relief in the Complaint.

CMO has used the exact same business model used by QMenu yet complains in its Complaint that the same conduct, when done by its competitors, is illegal. Moreover, in a bizarre procedural maneuver, to attempt to maintain the litigation in Illinois, where CMO's lawyers are based, CMO has enlisted the aid of a restaurant customer to bring, in the same action concerning the two competitors, a geographically unlimited and fail-safe putative class action that, as is evident from the face of the Complaint, fails as a matter of law. CMO does not even purport to be an appropriate class representative, but simply commingled class and competition claims together to force significant fees and expenses on its competitor in a forum far from either Plaintiff or Defendant competitors' places of business.

qMenu accordingly moves to transfer CMO's action, as well as the proposed national class action, to the Northern District of Georgia, Atlanta Division, where virtually all of the alleged act of omissions forming the basis of Plaintiffs' claims took place, and where the bulk of all relevant witnesses and relevant exhibits will be located. As outlined below, virtually all of the relevant factors, including proper venue in the transferee district, convenience of the parties and the witnesses; and service of the interests of justice, militate in favor of transfer to the Northern District of Georgia. Additionally, because the Northern District of Georgia is neither the situs of material events, nor where the conduct complained of occurred, Plaintiffs' choice of forum should be afforded minimal consideration.

## II. Factual Background and Procedural History

On December 14, 2020, Plaintiffs filed this putative national class action, alleging claims of unfair competition, tortious interference with contracts and prospective economic advantage,

violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and Georgia Fair Business Practices Act, and unjust enrichment against qMenu arising out of qMenu's alleged wrongful access to certain restaurants' Google My Business ("GMB") listings. qMenu is a corporation organized and existing under the laws of Delaware, whose principal place of business is located in Peachtree Corners, Gwinnett County, Georgia. Plaintiff CMO is a foreign business entity whose principal place of business is located in Hong Kong. Plaintiff P&F is an Illinois corporation whose principal place of business is located in Chicago, Illinois.

Plaintiffs' claims arise out of an alleged exploitation by qMenu of an alleged temporary vulnerability in the GMB platform that allegedly allowed qMenu to take control of GMB listing for restaurants, and redirect the processing of on-line ordering from CMO to qMenu, without the consent or knowledge of restaurant operators, such as P & F. Specifically, while Google normally send out confirmation requests to restaurant operators before allowing on-line menu platforms such as CMO or qMenu to redirect on-line ordering to their websites, for a period of time in 2020, such redirection could take place without separate confirmation being received from the restaurant operators.

While the Complaint references alleged loss of business by the proposed class of restaurant operators, in fact, the true nature of the alleged damage is the transfer of the restaurant's on-line ordering platform from CMO to qMenu. As discovery proceeds in this action, the evidence will demonstrate that qMenu always obtained consent and authorization from restaurant operators before accessing their GMB listing for the purposes of directing on-line ordering to the qMenu platform. The evidence will further demonstrate that CMO engaged in the exact same conduct they accuse qMenu of engaging in: altering restaurants' GMB listing without the consent or knowledge of the restaurant operators.

Regardless of what the evidence will ultimately demonstrate, the key issues and facts that will need to be addressed and developed by both Plaintiffs and qMenu in this litigation all center around acts or omissions that primarily took place in and around Gwinnett County, Georgia, and the witnesses who will be able to testify to those facts are similarly located primarily in Gwinnett County, Georgia. In their Complaint, Plaintiffs have listed the following common questions of fact that exist as to all putative class members and predominate over questions that affect only individual class members:

A. Whether Defendant failed to obtain permission from class members prior to taking control of their GMB listings;

B. Whether Defendant took unauthorized control of class members' GMB listings;

C. Whether Defendant took such control through improper means such as a vulnerability, bug or bypass in the Google verification process;

D. Whether Defendant misrepresented its identity in order to secure class members' GMB log-in information;

H. Whether Defendant used SPAM email accounts to transfer control of class members' GMB listings to Defendant;

F. Whether Defendant's actions in taking unauthorized control of class members' GMB listings prevented Class Members from providing important updates to their customers, including but not limited to updates related to the COVlD-19 pandemic;

G. Whether Defendant changed log-in access for class members' GMB listings, preventing the class members from changing their GMB listings back to the online ordering platform authorized by the class members, Chinese Menu Online;

H. Whether Defendant redirected class members' GMB online order links to nonfunctioning or nonexistent websites, preventing potential customers from ordering from class members;

Each of these common questions of fact focus either entirely on acts or omissions taken by qMenu in Gwinnett County, Georgia, or acts or omissions of the multitude of putative class members located throughout the United States.

qMenu's corporate records are located in its principal place of business in Gwinnett County, Georgia, within the Northern District of Georgia, and the key witnesses who can testify

{9432365:2}  4

as to acts or omissions taken by qMenu and its personnel are similarly located within the Northern District of Georgia. In contrast, the connection to the Northern District of Illinois centers around the location of a single putative class member, P & F, that operates a single restaurant located in Chicago, Illinois. P & F's records and witnesses can only address the issue of permission (from P & F's perspective as opposed to qMenu's), and only as to a single entity, out of a purported putative class allegedly spread throughout the country. P & F's location is no more compelling a basis for jurisdiction than the location of any other putative class member, including, any located within the Norther District of Georgia.

## III. Argument and Citation of Authority

### a. Legal Standards Governing Motions for Change of Venue for Forum Non Conveniens

A motion to transfer venue from one federal district to another is governed by 28 U.S.C.A. § 1404(a): "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The goal of Section 1404(a) "is to prevent [the] waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612 (1964). *See, also, Hess v. Gray*, 85 F.R.D. 15, 23 (N.D. Ill. 1979).

In enacting this transfer statute, Congress "'intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22(1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612 (1964)). Accordingly, district courts have broad discretion to transfer an action in the interest of justice. *See*, *e.g.*, *Ambrose v. C. H.*

*Robinson Worldwide, Inc.*, 521 F.Supp. 731, 734 (N.D. Ill. 2007), citing *Coffey v. Van Dorn Iron Works*, 796 S.2d 217, 219 (7th Cir. 1986).

Transfer of venue is appropriate where (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and the witnesses; and (4) the transfer will serve the interests of justice. *Nalco Co. v. Environmental Management, Inc.*, 694 F.Supp.2d 994, 998 (N.D. Ill. 2010). In evaluating the convenience of the parties and witnesses, the courts weigh the following factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums. *Id.*, citing *Allied Van Lines v. Aaron Transfer & Storage, Inc.*, 200 F.Supp.2d, 941, 946 (N.D.Ill.2002).

In considering the interests of justice, courts weigh additional factors, including: (1) the speed at which the case will proceed to trial; (2) the court's familiarity with the applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relation of each community to the occurrence at issue. *Id*. Additionally, while substantial deference is normally given to a plaintiff's choice of forum, the factor is of minimum value where the plaintiff's chosen forum is not the situs of material events, and/or where none of the conduct complained of occurred in the forum selected by the plaintiff. See *Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1017 (N.D. Ill. 1998); and *Mitkai v. United Parcel Service Co.*, 2009 WL 4674045 (N.D. Ill. Dec. 4, 2009), citing *Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955).

B. **This Action Should Be Transferred to the Norther District of Georgia**

      i. **This Civil Action May Properly Have Been Brought in the Northern District of Georgia.**

qMenu's Motion satisfies the threshold test of establishing that venue is proper in the transferee court—i.e., the Northern District of Georgia.[1] qMenu, the sole Defendant, is organized under the laws of Delaware, its principal place of business is located in Gwinnett County. (ECF No. 1 ("Complaint") at ¶ 5.) 28 U.S.C.A. § 1391(b) provides in pertinent part that a civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; and (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated. As it is beyond dispute that a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in the Gwinnett County, qMenu meets both prongs of the requirements for establishing proper venue within the Northern District of Georgia.

### ii. The Operative Facts Occurred in the Northern District of Georgia.

As noted above, the vast majority of the operative facts upon which Plaintiffs base their causes of action occurred in the Northern District of Georgia. Acts or omissions with respect to any alleged unauthorized taking of control of putative class members' GMB listings, including the methodology purportedly used by qMenu to take control of putative class members' GMB listings and the alleged failure to obtain permission for same, would have occurred in qMenu's principal offices in Gwinnett County, Georgia. Few of the relevant operative facts occurred in the locations of the restaurants operated by putative class members such as P&F, and the records and evidence demonstrating localized activities (such as efforts by customers to access GMB listings for on-line ordering, and to whose platform such contacts were directed) are far more likely to be found in the principal places of business of qMenu than the locations of the

---

[1] While qMenu does not concede that venue properly lies with the Northern District of Illinois for claims raised by CMO, it does concede that venue proper lies with this Court for the claims raised by P&F.

individual putative class members. This factor thus weighs heavily in favor of transferring venue to the Northern District of Georgia.

### iii. The Georgia District Court Would Be the Most Convenient Venue for the Parties and Witnesses.

As noted above, another key factor for this Court to consider is the potential convenience of the parties and witnesses. Once again, this factor militates in favor of transfer. As reflected in the affidavit of Christopher Xu (attached hereto as **Exhibit A**), substantially all of qMenu's present and former employees who have knowledge of qMenu's accessing of GMB accounts and interactions with putative class members, are located in or have business activities in Gwinnett County, Georgia. In comparison, even to the extent they had relevant information regarding the causes of action raised, none of CMO's personnel are located in Illinois, and the vast majority of putative class members are located outside of the Northern District of Illinois. In such circumstances, the convenience of the witness factor weighs heavily in favor of the location of the Defendant's business operations. *See Commodities Futures Trading Com'n v. First Nat. Monetary Corp.*, 565 F.Supp.30, 31 (N.D. Ill. 1983) (where action involved challenge to corporate marketing practices arising from complaints from numerous clients located throughout the country, convenience of witnesses and parties militated in favor of transfer to the district court in which defendants' principal offices were located). Potential disruption to qMenu's business associated with having to travel to a distant location for trial, attested to by Mr. Xu in his affidavit, is also a factor that weighs in favor of transfer under Section 1404(a). (Ex. A at ¶ 32.)

### iv. Relative Ease of Access to Sources of Proof Also Militates in Favor of Transfer to the Northern District of Georgia.

In addressing the relative ease of access factor, courts look to the location of the records and other documentary evidence relevant to the claims. *Amorose*, 521 F.Supp.2d at 736, n.1. As

reflected in the affidavit of Mr. Xu, the vast majority of the documents relevant to the claims raised by the Plaintiffs, including qMenu's relevant business records and books, are located in Georgia.

### v. Plaintiffs' Choice of Forum Is Entitled to Little Weight.

As noted above, this Court has held that a plaintiff's choice of forum is of minimum value where the plaintiff's chosen forum is not the situs of material events, and/or where none of the conduct complained of occurred in the forum selected by the plaintiff. *Law Bulletin Pub., Co.*, 992 F.Supp at 1017. Here, the alleged misconduct is the purportedly wrongful accessing of GMB listings by qMenu personnel. Any such accessing of the GMB online platform would have taken place at qMenu's offices. Similarly, if there was any contact between qMenu and any restaurant operators, at least one of the participants to those communications would have been on a phone or a computer terminal located in Georgia.

Because the vast majority if not all of the material events and allegedly improper conduct occurred in Georgia, the selection of the Northern District of Illinois as the proposed forum for this national class action based on a single restaurant being located in Chicago is thus entitled to little deference. The selection of the Northern District of Illinois by CMO, a foreign entity based in Hong Kong, is entitled to no weight whatsoever, as its only connection to the Northern District of Illinois appears to be the location of its counsel. *See Aland v. Kempthorne*, 2007 WL 4365340, n.5 (N.D. Ill. Dec. 11, 2007) (the convenience of an attorney is not a proper factor in considering a motion to transfer venue).

### vi. Interest of Justice Factors Also Militate in Favor of Transfer of Venue to the Norther District of Georgia

In evaluating the interests of justice factor, courts look to traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses, and consider such

factors as the speed at which the case will proceed to trial, and the court's familiarity with the applicable law. *Law Bulletin Pub., Co.*, 992 F.Supp. at 1019-1020. In evaluating the speed at which the case will proceed to trial, this Court relies upon (1) the median months from filing to disposition, and (2) the median months from filing to trial. *Id.* at 1020. The latest Federal Court Management Statistics for the period ending September 20, 2020 indicate the following for civil cases in both the Northern District of Illinois and the Northern District of Georgia:

| Median Time (Months) | N.D. Illinois | N.D. Georgia |
| --- | --- | --- |
| From Filing to Disposition | 10.6 | 5.7 |
| From Filing to Trial | 39.3 | 30.3 |

Thus, speed at which the case will proceed to trial militates in favor of transfer to the Northern District of Georgia.

Regarding familiarity with the applicable law, there is no basis to distinguish between the Northern District of Illinois and the Northern District of Georgia for the Lanham Act claims. As for the common law claims, Plaintiff's complaint is devoid of any suggestion of controlling law. Illinois follows the Restatement (Second) of Conflicts of Laws and uses the "most significant relationship" test to decide choice-of-law issues (looking to (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) domicile of the parties; (4) where the relationship of the parties is centered. *Carris v. Marriott Int'l, Inc.,* 466 F.3d 558, 560 (7th Cir. 2006). In Georgia, choice-of-law issues in tort cases are "governed by the rule of *lex loci delicti,* which requires application of the substantive law of the place where the tort or wrong occurred." *Carroll Fulmer Logistics Corp. v. Hines,* 309 Ga.App. 695, 710 S.E.2d 888, 890 (2011) (citing *Dowis v. Mud Slingers, Inc.,* 279 Ga. 808, 621 S.E.2d 413, 419 (2005)).

"[T]he place of wrong, the *locus delicti,* is the place where the injury sustained was suffered rather than the place where the act was committed, or ... it is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Risdon Enters., Inc. v. Colemill Enters., Inc.,* 172 Ga.App. 902, 324 S.E.2d 738, 740 (1984). Thus, the common law tort claims would either be governed by Georgia law, or the law of the location of the affected restaurant operator. Illinois law would therefore be far less likely to control those claims than Georgia law.

For the IFCA and GFBPA claims, presumably, the Northern District of Illinois would be more familiar with the former, and the Norther District of Georgia more familiar with the latter. However, the IFCA claims stand little chance of ultimate survival for CMO and any restaurants located outside of Illinios. *See Purdue v. Hy-Vee, Inc.*, 455 F.Supp.3d 749, 773-774 (C.D. Ill. 2020 (to bring a claim under the IFCA, a plaintiff must allege circumstances that relate to the disputed transaction occur primarily and substantially in Illinois), citing *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F.Supp.3d 725, 733 (N.D. Ill. 2018). Thus, the court's familiarity with applicable law once again militates in favor of a transfer to the Northern District of Georgia.

## IV. Conclusion

For the reasons noted above, this Court should grant Defendants' Motion to Transfer this action to the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C.A. § 1404(a), and grant Defendant such further relief as this Court deems just and proper.

Respectfully submitted this 26th day of February, 2021.

*/s/ Nicholas P. Panayotopolous*
Nicholas P. Panayotopoulos
Georgia Bar No. 560679
3344 Peachtree Road, NE, Suite 2400
Atlanta, GA 30326
Tel: (404) 876-2700

Fax: (404) 875-9433
npanayo@wwhgd.com

Jacob D. Radecki (ARDC #6321345)
McDonald Hopkins LLC
300 N. LaSalle Street, Suite 1400
Chicago, IL 60654
Phone: (312) 208-0111
Email: jradecki@mcdonaldhopkins.com

*Attorneys for Defendant qMenu, Inc.*

## CERTIFICATE OF SERVICE

This is to certify that on February 25, 2021, I electronically filed the foregoing **Defendant qMenu Inc.'s Memorandum in Support of Its Motion to Transfer Venue for Forum Non Conveniens** with the Clerk of the Court using the CM/ECF system, which will furnish electronic copies to all parties of record.

>*/s/ Jacob D. Radecki*
>Jacob D. Radecki (ARDC #6321345)
>McDonald Hopkins LLC
>300 N. LaSalle Street, Suite 1400
>Chicago, IL 60654
>Phone: (312) 208-0111
>Email: jradecki@mcdonaldhopkins.com
>
>*Attorneys for Defendant qMenu, Inc.*