**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| OBENTO LIMITED (d/b/a Chinese Menu Online), a Hong Kong business entity; P & F, INC. d/b/a HAPPINESS RESTAURANT, on behalf of itself and all others similarly situated, | ) ) ) ) ) ) | Case No. 1:20-cv-07391<br>Judge Jorge L. Alonso<br>Magistrate Judge Sheila M. Finnegan |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| QMENU, INC., a Georgia corporation, | ) ) | |
| Defendants. | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE CLASS ALLEGATIONS

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES .......................................................................................... iii

I.     INTRODUCTION ............................................................................................. 1

II.    MEMORANDUM OF LEGAL AUTHORITY .................................................. 1

   A.   The Legal Standards ........................................................................................ 1

     i.    Motion to Dismiss ...................................................................................... 1

     ii.   Motion to Strike Request for Class Relief .................................................. 2

   B.   The Complaint Fails to State a Claim For Any Cause of Action Against qMenu ........ 4

     i.    Key Underlying Factual Allegations ............................................................ 4

     ii.   Plaintiffs Have not Plausibly Alleged a Claim under the Lanham Act. ................... 5

     iii.  Plaintiffs' Claims Under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") Fail for the Similar Reasons. ...................................... 8

     iv.   Plaintiffs Also Fail to Allege Either Their Lanham Act or ICFA Claims With Particularity. ............................................................................................. 8

     v.    Plaintiffs' Claims Under the GFBPA Also Fail. ........................................ 9

       1.   CMO Lacks Standing under the GFBPA because it is a Competitor of Defendant, Not a Consumer. ...................................................................... 9

       2.   P & F May Also Lack Standing Under the GFBPA Because It Suffered No Damage in Georgia, and It Fails to Sufficiently Plead Reliance. ................................. 10

     vi.   Plaintiffs' Tortious Interference With Contract and With Prospective Economic Advantage Claims Are Based on Conclusory Allegations With No Factual Support... 11

     vii.  Plaintiff CMO's Unjust Enrichment Claim is Duplicative of its Other Claims. 14

     i.    On the Face of the Complaint, Plaintiff's Proposed Class Cannot Satisfy the Express Requirements of Rule 23. ............................................................. 14

       1.   The Proposed Class is Unascertainable. .................................................. 15

       2.   Plaintiff Fails to Plausibly Allege Numerosity. ....................................... 17

       3.   Plaintiff's Nationwide Class Action Claim Under the ICFA Is Barred by the Statute. .................................................................................................. 17

       4    Plaintiff Also Cannot Meet Either the Commonality or Predominance Requirement on Its Statutory Claims. ..................................................... 18

       5.   Individualized Issues of Causation Predominate on Plaintiff's Statutory Claims. 20

       6.   Plaintiff's Tortious Interference With "Prospective" Business Relationships Claim Is Likewise Individualized. ............................................................ 22

III.   CONCLUSION .............................................................................................. 23

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Northeastern Ill. Univ.*, 586 F. Supp. 2d 905 (N.D. Ill. 2008) ................................. 2

*Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) ..................................................... 13, 22

*Ali*, 481 F.3d at 945-46 ......................................................................... 13

*Alqaq v. CitiMortgage, Inc.*, No. 13 C 5130, 2014 WL 1689685, *5 (N.D. Ill. April 29, 2014).. 19

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 562 (1974) ...................................... 4

*Amchem Products, Inc. v Windsor*, 521 U.S. 591, 620 (1997) ................................... 3

*Ammons v. Dart*, No. 13 C 8817, 2015 WL 1740086, at *4 (N.D. Ill. Apr. 13, 2015) ................ 13

*Arango v. Work & Well, Inc.*, No. 11 C 1525, 2012 WL 3023338 (N.D. Ill. July 24, 2012) .... 2, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 1

*Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 292 Ill. Dec. 724, 826 (2005) .................................................................................. 13

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853, 216 Ill. 2d 100 (2005) .............. 17

*Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724 (N.D. Ill. 2005) ................................... 9, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 1

*Blankenship v. Pushpin Holdings, LLC*, No. 14 C 6636, 2015 WL 5895416, *7 (N.D. Ill. Oct. 6, 2015) ...................................................................................... 9

*Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N. D. Ill. 2014) ......................... 2

*Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006) ................................ 23

*Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) ................................ 14

*Comp. Conf. Coordinators, Inc. v. Kumon N. Am., Inc.*, 394 Ill. App. 3d 105, 915 N.E.2d 88, 92 (2009) ...................................................................................... 12

*Credeen & Associates, Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 879 (N.D. Ill. 2004) ............... 7

*Creeden*, 326 F. Supp. 2d at 880 ................................................................ 8

*Daisy, Inc. v. Pollo Operations, Inc.*, No. 2:14-cv-564-FtM-38CM, 2015 WL 1418607, *5-6 (M.D. Fla. Mar. 27, 2015) .................................................................. 3, 17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31, 36 (2003) ........................... 6

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ..................................... 9

*Dombrowsky v. Patricia*, No. 1:11-cv-3048-MHS, 2012 WL 12873617 (N.D. Ga. July 31, 2012) .................................................................................. 10

*Exchange Nat. Bank v. Farm Bureau Life Ins. Co. of Michigan*, 108 Ill. App. 3d 212, 38 N.E.2d 1247 (1982) ................................................................................. 12

*Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877 (Ill. 1991) .................................... 13

*Field Sanitation Sols., Inc. v. Hansen Energy & Envtl., LLC*, No. 2:08CV186 DAK, 2008 WL 11383363, at *3 (D. Utah Aug. 20, 2008) ................................................. 7

*Friedlander v. PDK Labs, Inc.*, 266 Ga. 180, 180 (1996) ....................................... 10

*Friedlander*, 266 Ga. at 180 ................................................................... 10

*Gen Tel. Co. of the Southwest v. Falcon* ........................................................ 4

*Gerlib v. R.R. Donnelley & Sons Co.*, No. 95 C 7401, 1997 WL 672645 (N.D. Ill. Oct. 27, 1997) .................................................................................. 20, 21

*Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) ................................ 20

*Glob. Sanitation Sols., Inc. v. Hansen Energy & Envtl., LLC*, No. 2:08CV186 DAK, 2009 WL 101823, at *1 (D. Utah Jan. 14, 2009) ..................................................... 7

*Griggs v. Robinson Sec.*, No. 84 C 4679, 1985 WL 1163, * 5 (N.D. Ill. May 9, 1985)............... 12

Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993).............................................. 3

Heller Fin., Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286 (7th Cir. 1989) .............................. 2

*Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) ................................... 4

*Hill*, 946 F. Supp. 2d at 831 .......................................................................................................... 18

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999) ..................................... 20

*In re Arby's Restaurant Group, Inc. Litigation*, 317 F. Supp. 3d 1222, 1224 (N.D. Ga. 2018) ... 11

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002)........................................... 18, 23

*In re Dairy Farmers of Am. Cheese Litig.*, File. No. 09-CV- 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ........................................................................................................................ 11

*In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II)*, 2012 WL 379944 at *14–*15 (D. N.J. Feb. 6, 2012) ....................................................................................................................... 22

*In re Magnesium Oxide Antitrust Litig.*, No. CIV. 10-5943 DRD, 2011 WL 5008090, at *10 (D. N.J. Oct. 20, 2011) ................................................................................................................... 11

*In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995)..................................... 23

*In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, 2021 WL 100204 (D. N.J. Jan. 12, 2021) ..................................................................................................................... 11

*In re Yasmin and Yaz (Drospirenone) Marketing*, 275 F.R.D. 270, 277 (S.D. Ill. 2011) ........ 21, 23

*Iqbal*, 556 U.S. at 678 ................................................................................................................. 3, 17

*Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 496 (7th Cir. 2012) ..................................... 15

*Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369 (M.D. Ga. 2011) .................. 20

*Kasalo v. Harris & Harris*, 656 F.3d 557, 563 (7th Cir. 2011)....................................................... 4

*Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) ................................... 19

*Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)................................................... 23

*Kubilius v. Barilla America, Inc*., No. 18 C 6656, 2019 WL 2861886 (N.D. Ill. July 2, 2019) ... 18

*Kubilius*, 2019 WL 2861886 at *2 .................................................................................................. 23

*Life After Hate, Inc. v. Free Radicals Project, Inc.*, No. 18 C 6967, 2020 WL 1903956 (N.D. Ill. Apr. 16, 2020) .......................................................................................................................... 14

*Malissa Co., Inc. v. OAO, Inc.*, Civ. A. No. 91-3394, 1992 WL 236947 (E.D. La. Aug. 28, 1992) ........................................................................................................................................... 23

*Maljack Prod., Inc. v. Survival Anglai, Ltd.*, No. 97 C 789, 1999 WL 182154, *3 (N.D. Ill. Mar. 24, 1999) ............................................................................................................................... 13

*Marshall & Swift/Boeckh, LLC v. URS Corporation*, No. CV-08-04375 GAF (SSx), 2009 WL 10668449 (C.D. Cal. Aug. 26, 2009) ....................................................................................... 7

*Martin v. Ford Motor Co.*, 292 F.R.D. 252 (D. N.J. 2013) ........................................................... 20

*McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 799 (7th Cir. 2017) ................................... 16

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) ........................... 15, 18

*Morningware, Inc. v. Hearthware Home Prod, Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ... 8

*Murry v. America's Mortg. Banc, Inc.*, 03 C 5811 and 03 C 6186, 2005 WL 1323364, at *3 (N.D. Ill. May 5, 2005) ....................................................................................................................... 20

*Oil Express Nat'l., Inc. v. Burgstone*, No. 96 C 4816, 1996 WL 666698 (N.D. Ill. Nov. 14, 1996) ........................................................................................................................................... 12

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 09179, 2017 WL 1436965, at *3 (N.D. Ill. Apr. 24, 2017)............................................................................................................ 9

*Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 09179, 2017 WL 1436965, at *3–4 (N.D. Ill. Apr. 24, 2017)....................................................................................................... 13, 22

*Oil-Dri*, 2017 WL 1436965 at * 3-4 ................................................................................. 13

*Oil-Dri*, 2017 WL 1436965 at *4 ...................................................................................... 13

*Oshana v. Coca-Cola Co.*, 225 F.R.D. 575 (N.D. Ill. 2005) ............................................ 20

Oshana v. Coca-Cola Co., 472 F.3d 506 (7th Cir. 2006) ................................................... 3

*Oshana*, 472 F.3d ............................................................................................................. 15

*Pastor v. State Farm Mutual Automobile Ins. Co.*, No. 05 C 1459, 2005 WL 2453900 (N.D. Ill. Sept. 30, 2005) ............................................................................................................ 15

*Rahman v. Chertoff*, 530 F.3d 622, 625-27 (7th Cir. 2008) ............................................. 17

*Sheeley v. Wilson Sporting Goods Co.*, No. 17-CV-3076, 2017 WL 5517352, at *2 (N.D. Ill. Nov. 17, 2017) ....................................................................................................................... 18

*Sherwin v. Samsung Electronics America, Inc.*, No. 16 C 7535, 2019 WL 10854535 (N.D. Ill. Dec. 18, 2019 (Alonso, J) ...................................................................................................... 2

*Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd* 612 F.3d 932 (7th Cir. 2010) ................................................................................................................................... 23

*Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ............................................. 14

*Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ........................................................... 15

*Slep-Tone Entertainment Corporation v. SEllis Enterprises, Inc.*, 87 F. Supp. 3d 897, 903 (N.D. Ill. 2015) ................................................................................................................................. 8

*Stanek v. Saint Charles Community Unit School Dist. No. 303*, No. 13-CV-3106, 2017 WL 5971985 (N.D. Ill. Dec. 1, 2017) (Alonso, J.) ...................................................................... 2

*Stanek*, 2017 WL 5971985 at *6 ...................................................................................... 2

*Stanek*, 2017 WL 5971985, *8 ....................................................................................... 18

*State of Ga. v. Meredith Chevrolet, Inc.*, 145 Ga. App. 8 (1978) .................................... 10

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) ......................... 20

*Tao Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 299 F. Supp. 2d 565, 572 (E.D. Va. 2004) ..................................................................................................................... 7

*Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 637 S.E.2d, 14, 17 (2006) ....................... 11

*Twombly*, 550 U.S. at 570 .............................................................................................. 15

*VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873 (N.D. Ill. 2019) ............................. 6

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) ........................................ 3

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................... 18

*Web Printing Controls, Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1203, n. 1 (7th Cir. 1009) ............ 6

*Wells Fargo* .................................................................................................................... 19

*White Plains Coat & Apron Co., Inc. v. Cintas Corp*, 460 F.3d 281, 284 (2d Cir. 2006) .............. 23

*Williams v. Ford Motor Co*, 192 F.R.D. 580, 585 (N.D. Ill. 2000) ............................................ 21

*Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287 (N.D. Ill. 2014) ................................... 2

*Wooley v. Jackson Hewitt Inc.*, No. 07 C 2201, 2011 WL 1559330, *4 (N.D. Ill. April 25, 2011) ....................................................................................................................................... 15

*Wright v. Family Dollar, Inc.*, No. 10-4410, 2010 WL 4962838, *1 (N.D. Ill. Nov. 30, 2010) ...... 2

*Zeeman v. Black*, 156 Ga. App. 82, 84 (1980) ......................................................... 10, 20

*Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) ........................................... 14

## I.  INTRODUCTION

Defendant qMenu, Inc. ("Defendant" or "qMenu") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs OBENTO LIMITED d/b/a Chinese Menu Online ("CMO") and P & F INC. d/b/a Happiness Restaurant's ("P & F") Complaint pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim, and its Motion . Defendant also seeks to strike the claims seeking class relief pursuant to FED. R. CIV. P. 12(f) for failure to establish the prerequisites necessary to support class relief identified in FED. R. CIV. P. 23(a).[1]

## II.  MEMORANDUM OF LEGAL AUTHORITY

### A.  The Legal Standards

#### i.  Motion to Dismiss

Pursuant to FED. R. CIV. P. 12(b)(6), this Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Satisfying pleading standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)). Claims that fail to allege either a

---

[1] This Motion is being filed contemporaneously with qMenu's Motion to Transfer for *Forum Non Conveniens* seeking transfer of this action to the Northern District of Georgia, Atlanta Division. In the interests of judicial economy, qMenu requests that this Court defer ruling on this Motion until such time as it has ruled on the Motion to Transfer, and that ruling on the Motion to Dismiss and Motion to Strike be left to the consideration of the Northern District of Georgia if the Motion to Transfer is granted.

cognizable legal theory or sufficient facts under a cognizable theory must be accordingly be dismissed.

### ii.  Motion to Strike Request for Class Relief

Where it is apparent from the pleadings alone that a class is improper, a motion to strike class allegations is appropriate. Pursuant to FED. R. CIV. P. 12(f) "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Seventh Circuit has recognized that "[i]n some cases . . . a motion to strike removes unnecessary clutter from the case, and serve[s] to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co., Inc*., 883 F.2d 1286, 1294 (7th Cir. 1989).

This Court has recognized that it may "properly strike matter when it has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party." *Stanek v. Saint Charles Community Unit School Dist. No. 303*, No. 13-CV-3106, 2017 WL 5971985 (N.D. Ill. Dec. 1, 2017) (Alonso, J.) (quoting *Alexander v. Northeastern Ill. Univ.*, 586 F. Supp. 2d 905, 915 (N.D. Ill. 2008)). In *Stanek*, 2017 WL 5971985 at *6, this Court granted defendant's motion to strike class allegations, noting that it is proper to do so "particularly when pleadings are facially defective and establish that a class action cannot be maintained."; *see also Sherwin v. Samsung Electronics America, Inc.*, No. 16 C 7535, 2019 WL 10854535 (N.D. Ill. Dec. 18, 2019 (Alonso, J); *Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014); *Wright v. Family Dollar, Inc.*, No. 10-4410, 2010 WL 4962838, *1 (N.D. Ill. Nov. 30, 2010); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N. D. Ill. 2014); *Arango v. Work & Well, Inc.*, No. 11 C 1525, 2012 WL 3023338, at *2 (N.D. Ill. July 24, 2012).

When considering a Motion to Strike Class Allegations, the Court should also consider the requirements of FED. R. CIV. P. 23. Rule 23 has two sets of express requirements for plaintiffs. Plaintiff must alleging facts sufficient to show that its proposed class satisfies the four prerequisites set forth in Rule 23(a): numerosity, commonality, typicality, and adequacy. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Plaintiff must also demonstrate that "questions of law or fact common to the class predominate over any questions affecting individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). In addition, Plaintiff's allegations must show that the proposed class satisfies Rule 23's implied requirement that the class must be identifiable and ascertainable. *See Id.* If Plaintiff fails to satisfy any of Rule 23(a)s requirements, its proposed class fails. *See Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993).

Plaintiff's class allegations must also meet the Supreme Court's pleading standards enunciated in *Twombly* and *Iqbal*. Accordingly, class allegations must be dismissed or stricken when they fail to allege either a cognizable legal theory or *sufficient facts* under a cognizable theory. *See Daisy, Inc. v. Pollo Operations, Inc.*, No. 2:14-cv-564-FtM-38CM, 2015 WL 1418607, *5-6 (M.D. Fla. Mar. 27, 2015) (*citing Iqbal*, 556 U.S. at 678).

The Supreme Court has observed that "[t]he class action is the exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks omitted). Rule 23 sets out stringent requirements for class certification that courts are bound to enforce. The limitations on class certification set out in Rule 23 must be applied with "full rigor." *See Amchem Products, Inc. v Windsor*, 521 U.S. 591, 620 (1997).

Pursuant to FED. R. CIV. P. 23(c)(1)(A), a court must make a determination on class certification "at an early practicable time." The United States Supreme Court, in *Gen Tel. Co. of the Southwest v. Falcon*, long ago recognized that "sometimes [class certification] issues are plain enough from the pleadings. . . ." 457 U.S. 147, 160 (1982). Indeed, "the rule's text plainly indicates that the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013); *Kasalo v. Harris & Harris*, 656 F.3d 557, 563 (7th Cir. 2011) (court may deny class certification "at an early practicable time" even before plaintiff moves for class certification); *see also Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 562 (1974). Accordingly, where it is apparent from the face of the complaint that a class action cannot be maintained, as is true here, it is proper to deny certification or, as appropriate, strike the class allegations *both before discovery and before the plaintiff moves for certification. See Hill*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (although it is true that Rule 23 requires discovery when class certification turns on the resolution of disputed facts, "sometimes the complaint will make it clear that class certification is inappropriate.").

**B. The Complaint Fails to State a Claim For Any Cause of Action Against qMenu**

**i. Key Underlying Factual Allegations**

On December 14, 2020, Plaintiffs filed this putative national class action, alleging claims of "false designation of origin" under the Lanham Act, tortious interference with contracts and prospective economic advantage, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and Georgia Fair Business Practices Act, and unjust enrichment against qMenu. The claims all arise out of qMenu's alleged wrongful access and control of the Google My Business ("GMB") listings for restaurants located throughout the United States.

Plaintiffs' claims arise out of an alleged temporary vulnerability in the GMB platform that allowed qMenu to take control of GMB listing for restaurants, and temporarily redirect the processing of on-line ordering from CMO to qMenu, or to non-functioning websites, without the consent or knowledge of restaurant operators, such as P & F. (ECF No. 1 ("Complaint"), ¶¶ 2, 14, 24, and 26.) Plaintiff CMO and Defendant qMenu are competitors in the online ordering platform space. (*Id.* ¶ 23.) Plaintiffs offer no explanation of the nature of the alleged "vulnerability, bug, or bypass," or how qMenu came into possession of the restaurants' confidential log-in information without the knowledge or consent of the restaurant operators.

While the Complaint speculates as to significant losses of business by the proposed class of restaurant operators as a result of the alleged misconduct (Compl. ¶ 29), P & F, the proposed class representative and only identified class member, identifies a $7,500 loss of revenue (*Id.* at ¶ 31), without any explanation of how that number was derived, or how it determined that any "lost" orders can be attributed to qMenu. CMO alleges that it enters into various, unspecified oral and written contracts with restaurants pursuant to which it managed that restaurant's online ordering (*Id.* at ¶¶ 19-20), but fails to provide any of the details of any such contract, including even the purported contract with P & F. P & F seeks to represent a geographically unlimited class of restaurants whose GMB listings, it speculates, may have also been "accessed" by qMenu without permission, potentially causing those restaurants to lose orders. (*Id.* at ¶ 10.) While couched as a consumer protection claim, the real gravamen and driving force behind this action are the alleged damages suffered by CMO as the result of the transfer of the proposed class member restaurants' on-line ordering platform from CMO to its competitor, qMenu.

## ii.  **Plaintiffs Have not Plausibly Alleged a Claim under the Lanham Act**.

In Count I of their Complaint, Plaintiffs allege a claim for "False Designation of Origin" under 15 U.S.C. § 1125(a). The Lanham Act imposes liability for a "false designation of origin . . . likely to cause confusion . . . as to the origin . . . of his goods." 15 U.S.C. § 1125(a)(1)(A). The Supreme Court has held that the "origin of goods" is "the source of the wares" or "the producer of the tangible goods [or services] that are offered for sale . . . ." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31, 36 (2003).

Illinois courts have held that false designation of origin claims "take two basic forms, 'passing off' and 'reverse passing off.'" *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, 370 F. Supp. 3d 873, 889 (N.D. Ill. 2019); *quoting Web Printing Controls, Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1203, n. 1 (7th Cir. 1009) (internal quotation omitted). 'Passing off' involves "the selling of a good or service of one's own creation under the name or mark of another." 'Reverse passing off" occurs "when a person removes or obliterates the original trademark, without authorization, before reselling goods produced by someone else." *See Web Printing Controls, Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1203, n. 1 (7th Cir. 1009) (internal quotation omitted).

Plaintiffs fail to allege either. Plaintiffs do not allege that qMenu sought to offer its own services under CMO's name or mark. They also do not allege that qMenu was offering or selling Plaintiff's services as its own. Rather, Plaintiffs' false designation of origin claim is premised on the allegation that qMenu was "accessing" GMB listings of various unspecified restaurants and redirecting them to "its own websites" (Compl., ¶ 27; *see also* Compl., ¶¶ 26, 30 (alleging that qMenu made "changes" or "alterations" to direct the customers to its own URL or website).)

Put another way, Plaintiffs do not claim that qMenu falsely represented the origin of CMO's services or that it was the owner of CMO's online ordering services, but rather assert that it was allegedly "altering" or "hijacking" the URL, directing customers to *its own website*, and

that qMenu was offering restaurant customers *its own* online ordering system as an alternative to that of CMO. These "facts" fail as a matter of law to allege a Lanham Act violation. *See Credeen & Associates, Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d 876, 879 (N.D. Ill. 2004) (dismissing Lanham Act claim where plaintiff alleged that defendant was marketing its own product that it allegedly derived from plaintiff's product, not *passing plaintiff's product off as its own.*); *see also Field Sanitation Sols., Inc. v. Hansen Energy & Envtl., LLC*, No. 2:08CV186 DAK, 2008 WL 11383363, at *3 (D. Utah Aug. 20, 2008) (dismissing Lanham Act claim where plaintiff did not "allege that Defendants took a tangible product or actual service owned or performed by Plaintiff and packaged it as Defendants' own."); *Marshall & Swift/Boeckh, LLC v. URS Corporation*, No. CV-08-04375 GAF (SSx), 2009 WL 10668449 (C.D. Cal. Aug. 26, 2009) (dismissing Lanham Act claim where defendants were the "origin" of the applications at issue); *Tao Systems Integration, Inc. v. Analytical Services & Materials, Inc.*, 299 F. Supp. 2d 565, 572 (E.D. Va. 2004) ("[t]o state a claim for reverse passing off, [plaintiff] must allege that the actual goods provided [by defendant] were in fact produced by [plaintiff], or the actual services provided [by defendant] were in fact performed by [plaintiff]"); *Glob. Sanitation Sols., Inc. v. Hansen Energy & Envtl., LLC*, No. 2:08CV186 DAK, 2009 WL 101823, at *1 (D. Utah Jan. 14, 2009).[2]

Despite Plaintiffs' attempt to shoehorn their allegations into a violation of the Lanham Act, the Supreme Court has recognized that the Lanham Act "does not have boundless

---

[2] Plaintiffs' claim is also implausible because it lacks *any factual* support whatsoever. While Plaintiffs allege that qMenu made representations to various unspecified restaurants and "potential customers" of those restaurants, that it, not CMO, was the authorized "administrator" of numerous CMO-managed GMB listings, and "related online food ordering websites," (*see* Compl., ¶ 35), there are no allegations that P&F or any other proposed class member received any such alleged misrepresentation, let alone relied on the alleged misrepresentation. The alleged representations would have been made to Google, not to any of the proposed Plaintiffs or their customers. The alleged misconduct is accordingly not the type of conduct for which remedies are provided under the Lanham Act.

application as a remedy for unfair trade practices." *Dastar*, 539 U.S. at 29 (quotation omitted). Rather it is limited "to certain unfair trade practices prohibited by the text" of the Act itself. *Id.* "According to its plain terms, the Lanham Act's protection only extends to infringement of registered trademarks, 15 U.S.C. § 1114; false designation of the origin of goods, 15 U.S.C. § 1125(a); and false advertising, 15 U.S.C. § 1125(a)." The Complaint fails to allege any cause of action under the plain terms of the Act and should accordingly be dismissed.

### iii. Plaintiffs' Claims Under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") Fail for the Similar Reasons.

Plaintiffs' claims under the ICFA fail for similar reasons. Like the Lanham Act, the ICFA primarily focuses on efforts to pass off goods and services as those of others, and/or actions likely to cause confusion or misunderstanding as to the source, sponsorship, affiliation and/or association with goods. Courts have routinely held that claims under the ICFA are resolved "according to the principles set forth in the Lanham Act" and claims under the statute must "rise or fall based on the Lanham Act claim." *Creeden*, 326 F. Supp. 2d at 880; *see also Slep-Tone Entertainment Corporation v. SEllis Enterprises, Inc.*, 87 F. Supp. 3d 897, 903 (N.D. Ill. 2015); *Morningware, Inc. v. Hearthware Home Prod, Inc.*, 673 F. Supp. 2d 630, 639 (N.D. Ill. 2009) ("Where a plaintiff's factual allegations under the [ICFA] also form the basis for plaintiff's claim under the Lanham Act, the legal inquiry is the same under both statutes.")

As with their claim under the Lanham Act, Plaintiffs allege that qMenu attempted to gain "control" over the unspecified restaurants' listings and websites, to direct ordering to its own websites. [Compl., ¶¶ 64, 66-67]. This claim is based upon an identical factual basis as Plaintiffs' Lanham Act claim and should likewise be dismissed.

### iv. Plaintiffs Also Fail to Allege Either Their Lanham Act or ICFA Claims With Particularity.

Because Plaintiff's Lanham Act claim is based upon alleged misrepresentations made by qMenu, it must be alleged with particularity pursuant to FED. R. CIV. P. 9(b). "To satisfy the heightened pleading standard of Rule 9(b), the circumstances [of the alleged misrepresentation] must be pleaded in detail. The who, what, when, where and how: the first paragraph of any newspaper story." *See Blankenship v. Pushpin Holdings, LLC*, No. 14 C 6636, 2015 WL 5895416, *7 (N.D. Ill. Oct. 6, 2015) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *see Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 09179, 2017 WL 1436965, at *3 (N.D. Ill. Apr. 24, 2017). Similar pleading requirements are imposed for ICFA claims. *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724 (N.D. Ill. 2005).

Plaintiffs allege in conclusory fashion that qMenu made misrepresentations in connection with their Lanham Act claim, so they are subject to Rule 9(b)'s heightened pleading requirements. The conclusory reference to "misrepresentations" (*see* Compl., ¶¶ 35-36) fails to meet the plausibility standard of *Twombly* and *Iqbal*, let alone the requirements set forth in Rule 9(b). Plaintiffs do not allege *any* of the required details of these alleged misrepresentations, including their substance, who made them and to whom they were made. Plaintiffs' vague and broad assertion that these alleged "misrepresentations" were made to "Google, restaurant owners, and potential customers of the Class Members" falls far short of meeting the requisite pleading standards.

## v. **Plaintiffs' Claims Under the GFBPA Also Fail**.

Count Five of the Complaint alleges a violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* ("GFBPA"). For the reasons outlined below, both CMO's and P & F's claims under the GFBPA fail to state valid claims for relief, and should be dismissed.

### 1. **CMO Lacks Standing under the GFBPA because it is a Competitor of Defendant, Not a Consumer.**

It is well-settled under Georgia's Fair Business Practices Act that claims are limited to activities "'. . . in the conduct of *consumer transactions and consumer acts or practices in* trade or commerce . . . .'" *State of Ga. v. Meredith Chevrolet, Inc.*, 145 Ga. App. 8, 12 (1978) (emphasis supplied). Accordingly, the GFBPA was intended to provide relief to consumers and not to competitors. *Friedlander v. PDK Labs, Inc.*, 266 Ga. 180, 180 (1996) (quoting *Zeeman v. Black*, 156 Ga. App. 82, 84 (1980). A suit based on a violation of the statute must be brought in the plaintiff's "capacity as an individual member of the consuming public." *Id.; see also Dombrowsky v. Patricia*, No. 1:11-cv-3048-MHS, 2012 WL 12873617 (N.D. Ga. July 31, 2012) (dismissing FBPA claim where it was not alleged in the plaintiff's capacity as a member of the consuming public.) A suit is not brought in such a capacity where, as here, "the plaintiff's only allegation of an injurious consumer act or practice relates to representations made by his competitor in the marketing or of competing products to the general consuming public." *Friedlander*, 266 Ga. at 180. Here, the Complaint makes clear that Plaintiff CMO's claim is brought in its capacity as a competitor of qMenu and not a member of the consuming public. (*See* Compl., ¶ 18.) It specifically alleges that qMenu interfered with its restaurant clients for which it was competing with qMenu. CMO lacks standing to bring this claim.

### 2. P & F May Also Lack Standing Under the GFBPA Because It Suffered No Damage in Georgia, and It Fails to Sufficiently Plead Reliance.

P & F also lacks standing to bring this claim because it is neither a Georgia resident nor has it suffered any injury in the State of Georgia. *See Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 735 (N.D. Ill. 2015) (declining to reach issue of whether Illinois plaintiff had standing to bring claims under other states' laws, but noting that if plaintiff filed an amended complaint the court "expects representatives will include persons who have allegedly suffered injury under the laws of some, if not all, of the other states whose laws Plaintiff invokes here"); *In re Dairy*

*Farmers of Am. Cheese Litig.*, File. No. 09-CV- 3690, 2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) (dismissing consumer unfair competition claims that were based on statutes in states where the named class action plaintiff did not reside or suffer any injury), and *In re Valsartan, Losartan, and Irbesartan Products Liability Litigation*, 2021 WL 100204 (D. N.J. Jan. 12, 2021) (Plaintiffs lack standing to bring claims under the laws of states where they do not reside and were not injured); *see also In re Magnesium Oxide Antitrust Litig.*, No. CIV. 10-5943 DRD, 2011 WL 5008090, at *10 (D. N.J. Oct. 20, 2011).[3]

Additionally, reliance is an essential element of a private cause of action under the GFBPA, and failure to plead reliance warrants dismissal of the claims. *In re Arby's Restaurant Group, Inc. Litigation*, 317 F. Supp. 3d 1222, 1224 (N.D. Ga. 2018), citing *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 637 S.E.2d, 14, 17 (2006). While Plaintiffs state in conclusory fashion that "in reliance on Defendants' unfair and deceptive act, restaurants relinquished and continue to relinquish control of their GMB listings and websites to the detriment of the restaurants and CMO" (Compl., at ¶77), Plaintiff's complaint is devoid of any identification of what unfair or deceptive acts restaurant operators allegedly relied on, or how such reliance led to any injury to the restaurant operators. While the court in *In re Arby's* did not require compliance with the heightened particularity requirements of FED. R. CIV. P. 9(b), it nonetheless required compliance with *Twombly* pleading standards. Here, Plaintiffs' GFBPA claims offer nothing more than conclusory allegations on critical elements of the claim, including the essential element of reliance. The claims should accordingly be dismissed.

> **vi. Plaintiffs' Tortious Interference With Contract and With Prospective Economic Advantage Claims Are Based on Conclusory Allegations With No Factual Support.**

---

[3] CMO is a Hong Kong corporation based in Hong Kong and therefore lacks standing for the same reason.

Plaintiff CMO's tortious interference with "contract" claim vaguely alleges that qMenu interfered with its "oral or written contracts with restaurants." (Compl., ¶ 43). Plaintiffs' prospective economic advantage claim is supposedly twofold, but equally as vague: CMO alleges interference with various unspecified "restaurant clients," and P & F alleges interference with its prospective customers. (Compl., ¶¶ 51, 57, 59.)

To properly plead a tortious interference with a contract, a complaint must state, *based on facts*, that: "(1) a current contract was in force and effect between the plaintiff and another party; (2) the defendant induced the breach of such contract, or caused a third party not to perform a contract,; and, (3) the interference must be intentional, causing a contract breach or termination." *Exchange Nat. Bank v. Farm Bureau Life Ins. Co. of Michigan*, 108 Ill. App. 3d 212, 38 N.E.2d 1247 (1982). The first requirement of such a claim is that a valid contract exists between the plaintiff and another party. *Comp. Conf. Coordinators, Inc. v. Kumon N. Am., Inc.*, 394 Ill. App. 3d 105, 915 N.E.2d 88, 92 (2009).

Plaintiff does not allege sufficient factual content to satisfy the pleading standards in *Iqbal* and *Ashcroft*. CMO alleges, with *no supporting facts*, that it has "oral or written contracts with restaurants." It fails to identify a single contract with a single restaurant, let alone the terms of any such contracts. qMenu is left to guess as to the identity of contracts with which it allegedly interfered, how its alleged conduct caused any alleged breaches of these unidentified contracts and what, if any, business CMO lost as a result. *See Griggs v. Robinson Sec.*, No. 84 C 4679, 1985 WL 1163, * 5 (N.D. Ill. May 9, 1985) (plaintiff failed to state claim where complaint "fails to identify the contract interfered with, or when this interference took place"); *Oil Express Nat'l., Inc. v. Burgstone*, No. 96 C 4816, 1996 WL 666698 (N.D. Ill. Nov. 14, 1996) ("Because

[the plaintiff] has failed to alleged any facts to support its 'information and belief,' it has failed to state a cause of action for tortious interference with a contract").

Plaintiffs' claims for interference with prospective economic advantage fare no better. To properly allege such a claim, a plaintiff must allege that it held a reasonable expectation of entering into a valid business relationship, or had a valid business contract, that defendant knew about this and purposefully interfered with this relationship or contract, and that Plaintiff was damaged. *See Fellhauer v. City of Geneva*, 568 N.E.2d 870, 877 (Ill. 1991); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 09179, 2017 WL 1436965, at *3–4 (N.D. Ill. Apr. 24, 2017). A plaintiff must allege that it held such a business relationship with a specific third party. *Oil-Dri*, 2017 WL 1436965 at * 3-4; *see also Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 292 Ill. Dec. 724, 826 (2005)(Plaintiff must allege "business expectancy with a specific third party as well as action by the defendant directed towards that third party."); *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007); *Maljack Prod., Inc. v. Survival Anglai, Ltd.*, No. 97 C 789, 1999 WL 182154, *3 (N.D. Ill. Mar. 24, 1999)(same).

Neither Plaintiff here identifies *any* specific third party; rather they both allege generally and without any factual support that they had a "legitimate existing and prospective economic relationship with numerous restaurant clients" (Compl., ¶¶ 51, 57). This language is nearly identical to the language in *Oil-Dri¸* where the court dismissed plaintiff's claim alleging vague and unspecified "valid relationship[s] with its retail customers and prospective retail customers" *Oil-Dri*, 2017 WL 1436965 at *4; *see also Ammons v. Dart*, No. 13 C 8817, 2015 WL 1740086, at *4 (N.D. Ill. Apr. 13, 2015) (citing *Ali*, 481 F.3d at 945-46) (granting motion to dismiss where plaintiff did not allege a business expectancy with a specific third party). Plaintiffs also fail to *plausibly* allege that they lost any business from *a single* client or customer. A plaintiff cannot

withstand a motion to dismiss where its allegations are speculative and conclusory and "unsupported by factual allegations." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000); *see also Life After Hate, Inc. v. Free Radicals Project, Inc.*, No. 18 C 6967, 2020 WL 1903956 (N.D. Ill. Apr. 16, 2020).

### vii. Plaintiff CMO's Unjust Enrichment Claim is Duplicative of its Other Claims.

Finally, Plaintiff CMO asserts a claim for unjust enrichment, alleging only that "Defendant has wrongfully taken food ordering commissions from Chinese Menu Online and its restaurant clients to the detriment of Chinese Menu Online. It would be unjust for Defendant to retain such benefits." (Compl., ¶ 84.) CMO's claim for unjust enrichment is based on the same improper conduct as its other claims. Where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim . . . will stand or fall with the related claim." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (affirming dismissal of unjust enrichment claim where it rested on same conduct alleged in ICFA claim); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (affirming summary judgment in favor of defendants on plaintiff's unjust enrichment claim where it rested on same conduct alleged in plaintiff's ICFA claim). Plaintiff's unjust enrichment claim is premised upon the same conduct as its other claims—that Defendant allegedly accessed certain GMB listings without permission and redirected online ordering to its website. It should be dismissed.

### C. Plaintiffs' Class Allegations Should Be Stricken.

#### i. <u>On the Face of the Complaint, Plaintiff's Proposed Class Cannot Satisfy the Express Requirements of Rule 23.</u>

The instant case is a textbook example of the sort of case for which a motion to strike is appropriate. Plaintiff fails to allege sufficient facts to "nudge[] [its class] claims across the line

from conceivable to plausible." *Twombly*, 550 U.S. at 570. There is no need for the parties or this Court to waste resources on discovery which will not substantiate a nationwide class action.

### 1.  **The Proposed Class is Unascertainable.**

An essential prerequisite to certification under Rule 23 is that the class is adequately defined so that the members of the class are clearly ascertainable. Plaintiff's proposed class fails to satisfy Rule 23's threshold prerequisite of being "definite enough that the class can be ascertained." *Oshana*, 472 F.3d at 513; *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."). "Class membership must also be ascertainable through objective criteria . . . with the determination made through ministerial review rather than arduous individual inquiry." *Wooley v. Jackson Hewitt Inc.*, No. 07 C 2201, 2011 WL 1559330, *4 (N.D. Ill. April 25, 2011). When it would be a "complex, highly individualized task" to identify the putative class members, the class definition fails. *See Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 496 (7th Cir. 2012); *Pastor v. State Farm Mutual Automobile Ins. Co.*, No. 05 C 1459, 2005 WL 2453900 (N.D. Ill. Sept. 30, 2005) ("If the court is required to conduct individual inquiries to determine whether each potential class member falls within the class, the court should deny certification.").

P & F seeks to certify a class of "[a]ll restaurants whose GMB listings Defendant accessed without owner consent or authorization between April and July 2020 and caused the restaurant to lose customer orders." (Compl., ¶ 10.) On its face, this is an improper "fail safe" class. As the Seventh Circuit has recognized, a "fail safe" class is problematic, because it is defined "so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). As a result, each class member "either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id*.; *see also McCaster v. Darden Restaurants, Inc.*, 845

F.3d 794, 799 (7th Cir. 2017) (class of people who were subject to defendant's vacation policy, but "*did not receive all earned vacation pay benefits*" turned on whether each person had a valid claim) (emphasis added). Here, membership in the class necessarily turns on whether a restaurant suffered lost customer orders **caused** by Defendant's allegedly "unauthorized" conduct of their online listings. Each restaurant either wins or is not a member of the class. This class should be stricken.

Plaintiff's amorphous class definition is also fundamentally and irreparably defective because it requires a multi-pronged, individualized examination for each of the potentially thousands of putative class members to determine class membership. To discern those in the class, this Court must adjudicate—on an individualized basis: (1) whether any restaurant's GMB listing was "accessed" by Defendant; (2) whether the Defendant "failed to obtain permission" prior to any such "access" or was access otherwise "unauthorized;" and (3) whether such "access" caused that restaurant to lose customer orders.

Further complicating this nearly impossible task is the vagueness of the terms in the class definition.[4] What constitutes "access?" Is verbal "consent" or "authorization" appropriate? Is it considered "consent" or "authorization" if a restaurant learned of the alleged conduct after it occurred and did not complain or object?[5] Classes defined using vague terms like this, with no objective meaning, fail for lack of ascertainability. *See Rahman v. Chertoff*, 530 F.3d 622, 625-27

---

[4] Even the term "restaurant" is vague as to what establishments are included. Are fast food chains "restaurants?" Is a bar or coffee shop a "restaurant?" It is impossible to identify from Plaintiff's allegations what establishments are included in the class.

[5] Plaintiff's own allegations demonstrate that these issues cannot be determined on a class-wide basis. Plaintiff alleges that Defendant varyingly "accessed" or "altered" the listings. (Compl, ¶ 28.) Plaintiff alleges that Defendant allegedly used varying means to access and/or alter the GMB listings, including "chang[ing] ownership of GMB listings" and "mak[ing] alterations to the GMB listings. (Compl., ¶ 26.) In some cases, putative class member restaurants "were unable to access their GMB listing accounts." *Id.* In others, Defendant allegedly altered "the URL for ordering online." (Compl., ¶ 27.)

(7th Cir. 2008) (class of individuals delayed entry to the United States as a result of undefined "contested policies, practices, and customs" not sufficiently definite to be ascertainable) "Classes that are too vaguely defined fail to satisfy the 'clear definition' component." *Mullins*, 795 F.3d at 659; *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 106-07 (N.D. Ill. 2013); *Holmes v. Godinez*, 311 F.R.D. 177 (N.D. Ill. 2015).

### 2. Plaintiff Fails to Plausibly Allege Numerosity.

As set forth above, Plaintiff's class allegations must meet the Supreme Court's pleading standards enunciated in *Twombly* and *Iqbal*. Plaintiff concedes that it "does not currently know the exact number of Class members," but alleges that it is "informed and believes that the Class Members are so numerous that the individual joinder of each individual Class Member is impractical." (Compl., ¶ 12.) While it is permissible to allege facts "upon information and belief," such a belief must be "based on factual information that makes the inference of culpability plausible." *See Daisy, Inc. v. Pollo Operations, Inc.*, No. 2:14-cv-564-FtM-38CM, 2015 WL 1418607, *5-6 (M.D. Fla. Mar. 27, 2015) (*citing Iqbal*, 556 U.S. at 678). While Plaintiff claims, presumably on the same speculative belief, that Defendant allegedly accessed the GMB listings "for more than 600 restaurants," (Compl., ¶ 28), it fails to allege any *factual* basis that even one of these restaurants "lost orders" as a result of this alleged access or whether those restaurants gave permission. Plaintiff's numerosity allegation fails as a matter of law.

### 3. Plaintiff's Nationwide Class Action Claim Under the ICFA Is Barred by the Statute.

Plaintiff's nationwide class under the ICFA fails because it is well-settled that the ICFA cannot be applied to "fraudulent transactions which take place outside Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 853, 216 Ill. 2d 100 (2005). A fraudulent transaction takes place in Illinois if the circumstances that relate to the disputed transaction occur primarily

and substantially in Illinois. *Id.* at 854; *see also Sheeley v. Wilson Sporting Goods Co.*, No. 17-CV-3076, 2017 WL 5517352, at *2 (N.D. Ill. Nov. 17, 2017) (Plaintiff could not state a claim for national class under the Illinois statute); *Kubilius v. Barilla America, Inc.*, No. 18 C 6656, 2019 WL 2861886 (N.D. Ill. July 2, 2019) (ICFA has no extra-territorial application). Here, Defendant is a Delaware corporation with its principal place of business in Georgia. (Compl., ¶ 5.) The class allegations, on their face, encompass restaurants *everywhere*. They should be stricken.[6]

### 4    Plaintiff Also Cannot Meet Either the Commonality or Predominance Requirement on Its Statutory Claims.

P & F likewise fails to allege a class that satisfies the commonality or predominance requirements of Rule 23, which requires Plaintiffs to show more than that they "have all suffered a violation of the same provision of law." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "What matters . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted); *see also Hill*, 946 F. Supp. 2d at 831 (allegations must show that "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication") (*quoting Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012); *Stanek*, 2017 WL 5971985, *8 (class members' claims must "depend on a common contention" that is "of such a nature that it is capable of class-wide resolution").

---

[6] Even if P&F attempts to amend its Complaint to invoke consumer protection laws of every state, a nationwide class could still not be certified because the differences between consumer–protection laws of the many affected states would predominate over any common issues of fact. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably" and "[b]ecause these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."), *cert. denied* 537 U.S. 1105 (2003). The same problem infects Plaintiffs' other causes of action.

In *Wells Fargo*, the court struck Plaintiff's class allegations where individualized inquiries were necessary as to "what Defendants did to a given class member and whether it was unfair under the applicable legal standard." 946 F. Supp. 2d at 833. Similarly, in *Alqaq v. CitiMortgage, Inc.*, No. 13 C 5130, 2014 WL 1689685, *5 (N.D. Ill. April 29, 2014), the court granted defendant's motion to strike the class allegations where resolution of the unfair business practices claims would "require individual inquiry into each purported class member's circumstances." *See also Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) (class certification not appropriate because whether each class member gave express permission for faxes at issue was individualized).

Here, based on the allegations of the Complaint, it is clear that there are no "common answers" that would resolve this case. Indeed, many of the alleged "common" issues alleged in the Complaint must be determined *individually* for each putative class member, including: (1) Did qMenu fail to obtain permission from each restaurant prior to allegedly "taking control" of their GMB listings?; (2) Did qMenu take "unauthorized" control of each restaurant's GMB listing?" (3) Did qMenu take any such control of any restaurant's listing through "improper means" and what were such "improper means?" (4) Did qMenu misrepresent its identity (to anyone, Google, customers or the restaurants themselves) to obtain the any restaurant's GMB log-in information?; (5) Did qMenu use SPAM email accounts to transfer control of any restaurant's GMB listing?; (6) Did qMenu's alleged conduct "prevent" any restaurant from communicating with its customers?; (7) Did qMenu change log-in access for any restaurant's GMB listing?; (8) Did qMenu "redirect" any restaurant's GMB listing and if so, was it redirected to qMenu's website, or other websites, including "nonfunctioning or nonexistent websites?"; and (9) Did qMenu's alleged conduct "cause" any restaurant to lose customer orders? It is clear from

the Complaint that all of these issues, and more, require individualized determination that predominate over any common issues of fact. *Amchem*, 521 U.S. at 624.[7]

### 5. Individualized Issues of Causation Predominate on Plaintiff's Statutory Claims.

Even assuming Plaintiff can prove that qMenu engaged in a common course of conduct with respect to all restaurants (which it cannot), the allegations of the Complaint make it clear that it cannot prove causation on a class-wide basis. Causation is an essential element of all of Plaintiffs' claims and is a highly individualized issue.[8] *Martin v. Ford Motor Co.*, 292 F.R.D. 252 (D. N.J. 2013). Each class member will need to demonstrate that the alleged deceptive act or misrepresentation proximately caused their injury. *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 586 (N.D. Ill. 2005). Specifically, to establish proximate cause, each individual plaintiff must provide evidence of his or her knowledge of the deceptive acts and purported misstatements

---

[7] Because individualized issues predominate, a class action is not manageable and is not the superior method to resolve these claims. Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Gerlib v. R.R. Donnelley & Sons Co.*, No. 95 C 7401, 1997 WL 672645 (N.D. Ill. Oct. 27, 1997) (internal citation omitted). Given the innumerable restaurant-specific issues that would have to be resolved for *each of the potentially thousands of restaurants included in P&F's class*, it would be nearly impossible to manage this case as a class action. *See Murry v. America's Mortg. Banc, Inc.*, 03 C 5811 and 03 C 6186, 2005 WL 1323364, at *3 (N.D. Ill. May 5, 2005) ("If individual issues predominate, then class certification is usually not a superior method for resolving the controversy."); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (vacating class certification, noting that the proposed class is "highly problematic" and that "[n]aging issues of choice of aw, commonality and manageability beset this case.")

[8] *See Geschke v. Air Force Ass'n*, 425 F.3d 337, 345 (7th Cir. 2005) "The elements of a claim under the ICFA are: (1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) the plaintiff suffered actual damage; and (5) the damage was proximately caused by the deception."; *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819-20 (7th Cir. 1999) ("to recover money damages under the Lanham Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages."; *Zeeman v. Black*, 156 Ga. App. 82 (1980)("To state a claim under the Georgia Fair Business Practices Act ("GFBPA"), a plaintiff must allege reliance on a defendant's misrepresentation to satisfy the causation element of the claim. Further, the GFBPA "incorporate[es] the 'reliance' element of the common law tort of misrepresentation."; *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369 (M.D. Ga. 2011).

"without determining what each member heard, saw, or knew, it is impossible to assign liability." *Id.* (internal citation omitted). Such individualized factual determinations preclude the plaintiff from proceeding as a class. *Id.; see also Williams v. Ford Motor Co*, 192 F.R.D. 580, 585 (N.D. Ill. 2000).

Individualized issues of causation infect all of Plaintiff's class claims, making a class action unmanageable and unworkable.[9] Each restaurant must show that it knew of the alleged misrepresentations leading to the unauthorized or unlawful access of its GMB listing by qMenu, and that such actions *caused* it to lose customer orders. Indeed, many restaurants may not have been aware of Defendant's alleged wrongful conduct, or may not have cared what website from which the orders were placed. Moreover, this inquiry goes beyond individualized inquiry into each class member's knowledge, but entails inquiries of restaurant *customer* conduct. *See In re Yasmin and Yaz (Drospirenone) Marketing*, 275 F.R.D. 270, 277 (S.D. Ill. 2011) (granting motion to strike class allegations asserted claims will require highly individualized factual inquiries unique not only to each class member but also to each class member's prescribing physician). Plaintiff P & F's own damages are based upon nothing but speculation; to extrapolate that speculation over a nationwide class of restaurants is beyond unmanageable. Did customers, upon being unable to order online, simply call the restaurant to make an order? Did any customers inform the restaurant that they were unable to access the website and therefore chose not to order? Did customers complain in an online forum such as Yelp that they were unable to order online? These causation issues are individualized and predominate over common issues.[10]

---

[9] Manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Gerlib v. R.R. Donnelley & Sons Co.*, No. 95 C 7401, 1997 WL 672645 (N.D. Ill. Oct. 27, 1997) (internal citation omitted).

[10] What information each putative class member had about the alleged conduct and when they knew it also affects causation. Perhaps some restaurants knew that qMenu had "gained control" of their GMB

6. **Plaintiff's Tortious Interference With "Prospective" Business Relationships Claim Is Likewise Individualized.**

To state a claim for tortious interference with prospective business relationships and expectations, P & F must show that it had a reasonable expectation of entering into a valid business relationship, or had a valid business contract, that Defendant knew about this and purposefully interfered with this relationship or contract, and that it was damaged by this interference. *See Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007) (internal citation omitted); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.*, No. 16 C 09179, 2017 WL 1436965, at *3–4 (N.D. Ill. Apr. 24, 2017). Given the numerous individualized issues on this claim, it is inappropriate for class certification. In *Arango v. Work & Well, Inc.*, No. 11 C 1525, 2012 WL 3023338, at *3 (N.D. Ill. July 24, 2012) (emphasis in original), the court struck class allegations of tortious interference with putative class members' employment, where "it must be shown *with respect to each class member*" that the alleged policy at issue interfered with the employee's employment. The court further noted that "this can be a time-consuming fact-specific inquiry in a case with a single plaintiff, not to mention with the hundreds of putative plaintiffs who allegedly exist." *Id.*

P & F alleges that qMenu interfered with each restaurant's ability to "maximize orders taken from customers via the restaurants' GMB listings and food ordering websites by using deceptive means to access, gain control of, and alter their GMB listings and food ordering websites, preventing customers from placing online orders." (Compl., ¶ 59.) To prevail on this claim, Plaintiff must show w*ith respect to each restaurant* that the Defendant's "access, "control" and/or "alteration" of their food ordering websites "prevented" customers from placing

---

listings and did not care. This would break the causal link. *See In re Ford Motor Co. E–350 Van Prods. Liab. Litig. (No. II)*, 2012 WL 379944 at *14–*15 (D. N.J. Feb. 6, 2012) (denying certification where information about the alleged defects was in the public domain and class members who knew about the alleged defect "will have a difficult time proving causation. . .").

online orders. Not only is this speculative, but it is *impossible* to do on a class-wide basis. Because individual issues predominate, the tortious interference claim is not amenable to a class action. *In re Yasmin and Yaz (Drospirenone) Marketing*, 275 F.R.D. 270 (S.D. Ill. 2011).

P & F's geographically unlimited class is also inappropriate because it is well-settled that the laws will vary from state, making certification impossible. *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-01 (7th Cir. 1995) (ordering class decertified because common law claims varied from state to state). *See, e.g., White Plains Coat & Apron Co., Inc. v. Cintas Corp*, 460 F.3d 281, 284 (2d Cir. 2006) (noting differences in tortious interference under New York and New Jersey law); *Malissa Co., Inc. v. OAO, Inc.*, Civ. A. No. 91-3394, 1992 WL 236947 (E.D. La. Aug. 28, 1992) (tortious interference claim does not exist under Louisiana law)[11]

### III.     CONCLUSION

For the reasons identified above, Defendant qMenu, Inc. respectfully requests that this Court enter an order (1) dismissing the Complaint for failure to state a claim upon which relief could be granted; (2) striking Plaintiff's claims seeking class relief; and (3) granting Defendant such further relief as this Court deems just and proper.

Respectfully submitted this 26th day of February, 2021.

/s/ Nicholas P. Panayotopolous
Nicholas P. Panayotopoulos
Georgia Bar No. 560679

---

[11] In diversity cases, a federal court must apply the forum state's choice of law rules in determining the applicable substantive law to apply. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97 (1941). Illinois follows the Restatement (Second) of Conflicts of Laws and uses the "most significant relationship" test to decide choice-of-law issues. *See Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). To determine which state has the most significant relationship, Illinois looks to (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) domicile of the parties; (4) where the relationship of the parties is centered." *Kubilius*, 2019 WL 2861886 at *2. Here, applying Illinois choice-of-law rules leads to the application of each state's laws. *See In re Bridgestone/Firestone, Inc.*, 288 F.3d at 1017. *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill 2008), *aff'd* 612 F.3d 932 (7th Cir. 2010).

3344 Peachtree Road, NE, Suite 2400
Atlanta, GA 30326
Tel: (404) 876-2700
Fax: (404) 875-9433
npanayo@wwhgd.com

Jacob D. Radecki (ARDC #6321345)
McDonald Hopkins LLC
300 N. LaSalle Street, Suite 1400
Chicago, IL 60654
Phone: (312) 208-0111
Email: jradecki@mcdonaldhopkins.com

*Attorneys for Defendant qMenu, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that on February 26, 2021, I electronically filed **Defendant's Memorandum of Law in Support of Motion to Dismiss for Failure to State a Claim and Motion to Strike Class Allegations** with the Clerk of the Court using the CM/ECF system, which will furnish electronic copies to all parties of record.

*/s/ Jacob D. Radecki*
Jacob D. Radecki (ARDC #6321345)
McDonald Hopkins LLC
300 N. LaSalle Street, Suite 1400
Chicago, IL 60654
Phone: (312) 208-0111
Email: jradecki@mcdonaldhopkins.com
*Attorneys for Defendant qMenu, Inc.*
