**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OBENTO LIMITED (d/b/a Chinese Menu Online), a Hong Kong business entity, P &F, INC. DBA HAPPINESS RESTAURANT, on behalf of itself and all others similarly situated, | ) ) ) ) | Judge Jorge L. Alonso Magistrate Judge Sheila M. Finnegan |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 1:20-cv-07391 |
| QMENU, INC., a Georgia corporation, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS OBENTO LIMITED AND P & F, INC. D/B/A HAPPINESS**
**RESTAURANT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE**
**COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

<u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ................................................................................................. 7

II.      STANDARD OF REVIEW: RULE 12(B)(6) MOTION TO DISMISS ........................... 9

III.      ARGUMENT .................................................................................................. 10

     A.      Plaintiffs' Complaint Is Sufficiently Well Pled ...................................... 10

         1.      Plaintiffs Allege a Proper Claim for Unfair Competition Under the Lanham Act. .............................................................. 12

         2.      Plaintiffs Have Pled Facts Sufficient To Sustain Their Claim Under the ICFA. ................................................................. 14

         3.      Plaintiffs Have Properly Pled a Claim for Violations under the Georgia Fair Business Practices Act. ................................. 16

         4.      The Complaint Sufficiently Pleads Claims for Tortious Interference with Contract and Tortious Interference with Prospective Economic Advantage. ............................................ 19

         5.      Federal Law Permits the Pleading of Unjust Enrichment Claims in the Alternative. ...................................................... 23

     B.      qMenu's Motion To Strike Plaintiffs' Request for Class Relief Is Improper. ............................................................................... 24

     C.      qMenu Waived Other Arguments Concerning the Sufficiency of the Claims Alleged in the Complaint. ................................................ 25

     D.      Should the Court Determine That Plaintiffs' Claims Are Insufficiently Pled, Plaintiffs Request the Right to Amend. ................... 26

IV.      CONCLUSION ............................................................................................ 26

     TABLE OF AUTHORITIES .................................................................................. 3

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Abbasi v. Bhalodwala,*
  149 F. Supp. 3d 1372 (M.D. Ga. 2015)...................................................................18

*Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,*
  499 F.3d 663 (7th Cir. 2007).........................................................................11

*Am. Broad. Co. v. Maljack Prods., Inc.,*
  34 F. Supp. 2d 665 (N.D. Ill. 1998)...................................................................14

*Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.,*
  2004 WL 3363844 (N.D. Ill. Dec. 28, 2004)..........................................................25

*Amin v. Mercedes-Benz USA, LLC,*
  301 F. Supp. 3d 1277 (N.D. Ga. 2018)................................................................19

*In re Arby's Restaurant Group Inc. Litig.,*
  2018 WL 2128441 (N.D. Ga. Mar. 5, 2018)........................................................18, 19

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)...................................................................................12

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)..........................................................................10, 11, 12

*Bissessur v. Ind. Univ. Bd. of Trs.*
  581 F.3d 599 (7th Cir. 2009).........................................................................12

*Brathwaite v. Fulton-DeKalb Hosp. Auth.,*
  317 Ga. App. 111 (2012)..............................................................................21

*Brooks v. Ross,*
  578 F.3d 574 (7th Cir. 2009).........................................................................12

*Cleary v. Philip Morris, Inc.,*
  656 F.3d 511 (7th Cir. 2011).....................................................................24, 25

*Cole-Haddon, Ltd. v. Drew Philips Corp.,*
  454 F. Supp. 2d 772 (N.D. Ill. 2006)................................................................24

*Conditioned Ocular Enhancement, Inc. v. Bonaventura,*
  458 F. Supp. 2d 704 (N.D. Ill. 2006)................................................................23

*Cook v. Winfrey,*
  141 F.3d 322 (7th Cir. 1998).....................................................................22, 23

*Crane v. Albertelli,*
    264 Ga. App. 910 (2003) ........................................................................................22

*D 56 v. Berry's,*
    1996 WL 252557 (N.D. Ill. May 10, 1996) ...........................................................15

*Delise v. Fed. Express Corp.,*
    2001 WL 321081 (N.D. Ill. Mar. 30, 2001) ..........................................................26

*Exch. Nat'l Bank v. Farm Bureau Life Ins. Co. of Michigan,*
    108 Ill. App. 3d 212 (3d Dist. 1982) .....................................................................21

*Friedlander v. PDK Labs, Inc.,*
    266 Ga. 180 (1996) ................................................................................................18

*Graves v. Man Grp. USA, Inc.,*
    479 F. Supp. 2d 850 (N.D. Ill. 2007) ....................................................................10

*Griggs v. Robinson Securities,*
    1985 WL 1163 (N.D. Ill. May 9, 1985) ...........................................................21, 22

*Gros v. Midland Credit Mgmt.,*
    525 F. Supp. 2d 1019 (N.D. Ill. 2007) ..................................................................16

*Hickman v. Wells Fargo Bank N.A.,*
    683 F. Supp.2d 779 (N.D. Ill. 2010) .....................................................................11

*Horton v. Nat'l City Mortg. Servs. Co.,*
    2010 WL 1253994 (C.D. Ill. Mar. 24, 2010) ........................................................11

*Inkaholiks Luxury Tattoos Georgia, LLC v. Parton,*
    324 Ga. App. 769 (2013) ........................................................................................17

*James v. Sheahan,*
    137 F.3d 1003 (7th Cir. 1998) ...............................................................................26

*Kolupa v. Roselle Park Dist.,*
    438 F.3d 713 (7th Cir. 2006) .................................................................................10

*Landmark Document Servs., LLC v. Omega Litig. Solutions, LLC,*
    2006 WL 2861098 (N.D. Ill. Sep. 29, 2006) ........................................................10

*Lavalais v. Vill. of Melrose Park,*
    734 F.3d 629 (7th Cir. 2013) .................................................................................10

*Lexmark Int'l, Inc., v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) .........................................................................................13, 14

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*,
  800 F.3d 343 (7th Cir. 2015)..........................................................................27

*Logan Graphic Prod., Inc. v. Textus USA, Inc.*,
  2002 WL 31507174 (N.D. Ill. Nov. 8, 2002) ...................................................13

*McMahon v. City of Chicago*,
  1999 WL 342712 (N.D. Ill. May 14, 1999) .....................................................14

*NewSpin Sports, LLC v. Arrow Elecs., Inc.*,
  910 F.3d 293 (7th Cir. 2018).........................................................................27

*Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*,
  2014 WL 126082 (N.D. Ill. Jan. 14, 2014) .....................................................24

*Palmer v. Combined Ins. Co. of Am.*,
  2003 WL 466065 (N.D. Ill. Feb. 24, 2003).................................................25, 26

*Pappas v. Pella Corp.*,
  363 Ill. App. 3d 795 (1st Dist. 2006) ..............................................................16

*Petri v. Gatlin*,
  997 F. Supp. 956 (N.D. Ill. 1997) ..............................................................12, 26

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011)..........................................................................12

*Power v. GMAC Mortg. Corp.*,
  2007 WL 723509, *5 (N.D. Ill. Mar. 7, 2007) .................................................25

*Robinson v. Toyota Motor Credit Corp.*,
  201 Ill. 2d 403 (2002)...................................................................................16

*Rossi Distribs., Inc. v. Lavazza Premium Coffees Corp.*,
  2002 WL 31207324 (N.D. Ill. Oct. 2, 2002)....................................................23

*Skinner v. Shirley of Hollywood, a Div. of Nat. Corset Supply House*,
  723 F. Supp. 50 (N.D. Ill. 1989) ....................................................................24

*State of Georgia v. Meredith Chevrolet, Inc.*,
  145 Ga. App. 8 (1978) ..................................................................................17

*Stroman v. Bank of Am Corp.*,
  852 F. Supp. 2d 1366 (N.D. Ga. 2012) ...........................................................19

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) .......................................................................11

*Tellabs, Inc. v. Makor Issues, Ltd.,*
    551 U.S. 308 (2007) ............................................................................................... 10, 11

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
    505 U.S. 763 (1992) (Stevens, J., concurring) ..................................................... 13

*Vincent v. City Colleges of Chicago,*
    485 F.3d 919 (7th Cir. 2007) ................................................................................ 12

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,*
    536 F.3d 663 (7th Cir. 2008) ................................................................................ 10

*Woodke v. Dahm,*
    873 F. Supp. 179 (N.D. Iowa 1995) ..................................................................... 13

## Statutes

15 U.S.C. § 1125(a) (Section 43 of the Lanham Act) ..................................... 12, 13, 14, 15, 16

Georgia Fair Business Practices Act (O.C.G.A. § 10-1-390, *et seq.*) .................................... *passim*

Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) .................................................................................................................. 16

Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") ............................. 10, 15, 16

## Other Authorities

FRCP 8 ..................................................................................................................... 9, 11, 12, 22

FRCP 9 ................................................................................................................................ 12, 13, 19

FRCP 12 .............................................................................................................................. 10, 26, 27

FRCP 15 ........................................................................................................................................ 27

FRCP 23 ........................................................................................................................................ 25

Plaintiff Obento Limited ("Chinese Menu Online" or "CMO") and Plaintiff P & F Inc. DBA Happiness Restaurant, on behalf of itself and all others similarly situated ("Happiness") (collectively referred to as "Plaintiffs"), by and through their attorneys, Goldberg Segalla LLP, as and for their response in opposition to Defendant qMenu, Inc.'s ("qMenu") Motion to Dismiss ("Motion") (ECF Doc No. 17) and its supporting Memorandum (ECF Doc No. 18) pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 12(f), states as follows:

## I.  <u>INTRODUCTION</u>

In arguing for dismissal, qMenu either misunderstands or misrepresents the law, misunderstands or misrepresents Plaintiffs' allegations, or a combination of these problems, all of which support denial of the Motion. Most important, nowhere in its memorandum (ECF Doc No. 18) does qMenu apply the fundamental principle that Plaintiffs' allegations must be accepted as true at this initial stage of the proceedings. Rather, qMenu directs the Court to consider endless hypotheticals and "conclusory statements" it believes are asserted by the Complaint that, in practice, will be resolved through the exchange of discovery.

Despite qMenu's contentions, the facts alleged in the Complaint sufficiently detail how qMenu illegally exploited a vulnerability in the Google My Business ("GMB") platform, resulting in harm to Plaintiffs and the proposed Class Members. Complaint, ¶ 2. CMO offers a full service online product for its restaurant clients, wherein the restaurant clients, such as Happiness, provide CMO with restaurant information, including a full menu, and CMO uses the information to create an online ordering website linked to the restaurant client's GMB listing. *Id.*, ¶¶ 18-19. qMenu began offering similar services to restaurant clients in 2018 and launched its online application shortly thereafter in 2019. *Id.*, ¶ 23.

Although discovery will illuminate the facts in detail beyond those currently known to Plaintiffs, the start of qMenu's scheme occurred in April 2020 when it discovered a vulnerability in

Google's GMB platform software. *Id.*, ¶ 24. After realizing the opportunity to gain an unfair advantage by exploiting the vulnerability, qMenu began to interfere with the online ordering operations of members of the proposed class, like Happiness, and assume control of their GMB listings. *Id.*, ¶¶ 25-26. In furtherance of the scheme, qMenu altered the restaurants' GMB listings, replacing the existing URL link to the online ordering page administered by CMO, so orders were sent to the qMenu-created ordering platform. *Id.*, ¶ 27. qMenu seized many GMB listings of CMO clients this way. *Id.*, ¶ 28. Unfortunately, in the midst of the COVID-19 pandemic – when online ordering was a crucial lifeline – qMenu deprived individual restaurants of the ability to correct their malfunctioning GMB listings, as qMenu had misdirected them to malfunctioning, incomplete, and/or defective URLs. *Id*, ¶¶ 29-30.

In short, qMenu engaged – and continues to engage – in what amounts to an illegal and hostile takeover of GMB listings for the sole purpose of qMenu's commercial gain. qMenu does not dispute the facts as known by Plaintiffs, but seeks to eviscerate the very purpose of the pleading standards under the FRCP – to give fair notice to the defendant. Plaintiffs have met their pleading burden, putting qMenu on notice of the facts that identify the heart of what this action concerns and the damages sustained by Plaintiffs, as well as the proposed Class Members. As Supreme Court precedent and Seventh Circuit case law make abundantly clear, the Complaint more than satisfies the federal liberal pleading standard codified in FRCP 8. Further, qMenu's motion reveals that it has notice of the allegations contained in the Complaint. *See* ECF Doc Nos. 17 and 18. Discovery is the appropriate vehicle to identify the specific details that qMenu seeks to further understand concerning the support for Plaintiffs' claims.

To that end, qMenu's Motion does not present any basis to dismiss Plaintiffs claims, but rather evidences why this matter is ready to move forward with discovery, as Plaintiffs sufficiently pleaded all of the elements for claims for unfair competition (Count I), tortious interference with contract (Count II), tortious interference with prospective economic advantage (Count III), violations of the

Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) (Count IV), violations of the Georgia Fair Business Practices Act (O.C.G.A. § 10-1-390, *et seq.*) (Count V), and unjust enrichment (Count VI).

## II.     STANDARD OF REVIEW: RULE 12(B)(6) MOTION TO DISMISS

A motion to dismiss under FRCP 12(b)(6) decides the sufficiency of the complaint, not the merits of the case. *Graves v. Man Grp. USA, Inc.*, 479 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (*citing Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998)). A plaintiff is not required to plead sufficient facts to establish the legal elements of its claim, but must plead only the minimum facts needed to put the defendant on notice as to the gravamen of the claims sufficient for the defendant to file responsive pleadings. *Landmark Document Servs., LLC v. Omega Litig. Solutions, LLC*, 2006 WL 2861098, at *3 (N.D. Ill. Sep. 29, 2006) ("The fact that a complaint could be improved does not justify dismissal, as long as 'it is intelligible and gives the defendants notice of the claim for relief.'"); *see Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("Federal Complaints plead claims rather than facts."). As such, a complaint must accomplish two objectives: (i) "provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" and (ii) provide a "defendant with 'fair notice' of the claim and its basis." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Rule 12(b)(6) merely requires a complaint to meet a "plausibility" – not a "probable cause" or "particularity" – standard. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint survives dismissal even if the possibility of recovery is "improbable" or extremely "remote and unlikely." *Twombly*, 550 U.S. at 556. All factual allegations are accepted as true, and viewed in the light most favorable to the plaintiff. *Id.* Complaint allegations also must be considered in their entirety and not simply scrutinized in isolation. *Tellabs, Inc. v. Makor Issues, Ltd.*, 551 U.S. 308, 310 (2007).

At the pleading stage, a plaintiff must assert "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal behavior." *Id.* The Seventh Circuit has cautioned that *Twombly* "must not be overread" and that the decision "made clear that it did not, in fact, supplant the basic notice-pleading standard." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (denying motion to dismiss). A district court should dismiss a complaint only if "the factual detail ... [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

## III.   <u>ARGUMENT</u>

### A.   Plaintiffs' Complaint Is Sufficiently Well Pled.

What appears to be the primary basis for qMenu's Motion is its view that Plaintiffs have not sufficiently met the Federal pleading standards. Rather than illustrate how the factual allegations contained in the Complaint fail to provide sufficient notice of the claims against qMenu, however, the Motion focuses on the lack of specific details that, at this time, are solely known by qMenu. Such specific details are the types of facts that the parties will reveal through discovery.

When a plaintiff commences suit, it need not support every allegation with factual detail. *See Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp.2d 779 (N.D. Ill. 2010) (largely denying motion to dismiss and rejecting the defendant's assertion that the plaintiff had to specifically allege facts to support allegation in complaint). "A complaint need not plead legal theory, nor need it match facts to every element of a legal theory." *Horton v. Nat'l City Mortg. Servs. Co.*, 2010 WL 1253994, at \*4 (C.D. Ill. Mar. 24, 2010) (citing *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998)). "General allegations of elements consistent with a claim, unsupported by factual allegations in support, are sufficient to satisfy the 'minimal requirements of federal notice pleading.'" *Horton*, 2010 WL 1253994, at \*3 (quoting *Cook*

*v. Winfrey*, 141 F.3d 322, 328 (7th Cir. 1998)); *see also Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007) (Rule 8 "does not require fact pleading").

In seeking dismissal of the Complaint, qMenu's pleadings demonstrate how Plaintiffs complied with the well-settled pleading standards and provided fair notice to qMenu of the bases for Plaintiffs' claims. The Seventh Circuit has emphasized that neither *Twombly* nor *Iqbal* changed the fundamentals of notice pleading. *See, e.g.*, *Bissessur v. Ind. Univ. Bd. of Trs.* 581 F.3d 599, 603 (7th Cir. 2009) ("Our system operates on a notice pleading standard; *Twombly* and its progeny do not change this fact."). Here, the Complaint more than raises "a reasonable expectation that discovery will reveal evidence to support Plaintiffs claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The nature of qMenu's online transgressions are the type that Plaintiffs cannot – and need not yet – identify the specific individuals who committed the alleged wrongful acts, the specific times the alleged wrongful acts were committed, the specific documents involved, or the identity of the consumers who were allegedly injured, as qMenu argues.

Relatedly, qMenu misapprehends Plaintiffs' requirement to plead statutory fraud claims with specificity pursuant to FRCP 9(b). While these claims must ordinarily be pleaded with specificity, the specificity requirement may be relaxed when specific details are within the defendant's exclusive knowledge or control. *Petri v. Gatlin*, 997 F. Supp. 956, 974 (N.D. Ill. 1997). In fact, the Complaint meets these standards by alleging the facts of each claim as known by Plaintiffs. As the details regarding this conduct are uniquely within qMenu's knowledge, they need not be pleaded with specificity at this stage. *See id.* ("Rule 9(b)'s requirements may be relaxed when specific details are within the defendants' exclusive knowledge or control") (collecting cases in accord); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (courts need not "take an overly rigid view of the formulation," and thus, the level of specificity required to satisfy Rule 9(b) "may vary on the facts of a given case.").

1. **Plaintiffs Allege a Proper Claim for Unfair Competition Under the Lanham Act.**

qMenu's first argument attacking Plaintiffs' Count I, False Designation of Origins claim under 15 U.S.C. § 1125(a) (Section 43 of the Lanham Act), should be rejected because Plaintiffs pleaded sufficient facts to state a proper claim for unfair competition thereunder. The Lanham Act serves to "protect persons engaged in commerce within the control of Congress against unfair competition" – that is, against "injuries to business reputation and present and future sales." *Lexmark Int'l, Inc., v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) (citations omitted). Section 1125, in particular, prohibits the "use in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion" – and "reaches a wide range of unfair competitive practices." 15 U.S.C. § 1125(a); *Logan Graphic Prod., Inc. v. Textus USA, Inc.*, 2002 WL 31507174, at *2 (N.D. Ill. Nov. 8, 2002). "Its original intent was to address trademark infringement, but its scope was broadened in 1988 to encompass unfair competition." *Id.* (citing *Truck Components, Inc. v. K–H Corp.*, 776 F. Supp. 405, 408 (N.D. Ill. 1991)).

The broadened scope of the Lanham Act is most evident by the addition of the phrase "or commercial activities." *Id.*; *Proctor & Gamble Co. Haugen*, 222 F.3d 1262 (10th Cir. 2000) (the defendant's message did not relate to "goods or services," it did relate to broader "commercial activities" of the plaintiff's company, so as to fall within the Lanham Act). "Congress did not intend to narrowly limit the term 'commercial activities,' but rather intended to encompass those activities which do not solely involve the provision of services or the production of goods." *Id.* at 1273; *see also Woodke v. Dahm*, 873 F. Supp. 179, 189 (N.D. Iowa 1995) ("More recently, courts have expanded a claim for unfair competition under section 43(a) to matters beyond 'passing off' to 'encompass any form of competition or selling which contravenes society's current concepts of 'fairness.'"); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring) ("Narrowly drawn and

intended to reach false designations or representations as to the geographical origin of products, [Section 43(a)] has been widely interpreted to create, in essence, a federal law of unfair competition…. It has definitely eliminated a gap in unfair competition law ….")

To sustain a claim under 15 U.S.C. § 1125(a)(1)(a) for unfair competition founded on false designation of origin, a plaintiff must prove: (1) the defendant made false representations about the plaintiff's endorsement or association; (2) the misrepresented product travels in interstate commerce; (3) the misrepresentations are likely to deceive a substantial segment of the intended audience or consumers, and (4) the misrepresentations are material in that they are likely to cause injury. *See McMahon v. City of Chicago*, 1999 WL 342712, at *2 (N.D. Ill. May 14, 1999), citing *Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993), abrogated in part by *Lexmark Int'l, Inc., v. Static Control Components, Inc.*, 572 U.S. 118, 131 (2014) (the conduct at issue does not need to be assertions made to the ultimate consumers of the products); *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 677-78 (N.D. Ill. 1998) ("nothing in the language of the Lanham Act 'specifically requires a false representation be intended to influence the ultimate consumer'") (quoting *Am. Needle & Novelty, Inc. v. Drew Pearson Mktg., Inc.*, 820 F. Supp. 1072, 1077 (N.D. Ill. 1993)).

Plaintiffs sufficiently pleaded an unfair competition claim, as the allegations in their Complaint track the language of Section 1125(a). For instance, Plaintiffs allege that qMenu changed the existing links from restaurants' GMB pages, which were connected to CMO-created ordering websites, to a qMenu-created ordering website that was defective, or at the very least, incomplete; and, this caused the many consumers seeking to order food from the individual restaurants to encounter a broken link and then give up, all resulting in a substantial loss of revenue by the individual restaurants during a global pandemic. Complaint, ¶¶ 25-29, 32, 37. As a result, these consumers were confused or deceived into believing that qMenu's scheme worked – that the individual restaurants had authorized qMenu's online ordering website to be the official one linked to the restaurant's GMB page. *Id.*, ¶ 38. Plaintiffs

also alleged that qMenu misrepresented to Google that qMenu, and not anyone else, such as CMO, had approval or authorization to manage numerous restaurants' GMB pages; this misrepresentation deceived Google into providing qMenu access to the PIN needed to alter the restaurants' GMB pages and disconnect the link from the GMB page to the CMO-created ordering website, thereby resulting in substantial financial loss to CMO. *Id.*, ¶¶ 13, 25-28, 35, 37.

qMenu contends Plaintiffs fail to identify any acts whatsoever that constitute unfair competition. Yet, qMenu simply points to the lack of detailed facts. Plaintiffs are under no obligation to describe in detail at this stage of the case specific acts that constitute unfair competition, especially when the Complaint already sketched, with as much knowledge as Plaintiffs currently have, qMenu's scheme to unfairly to deceive end consumers, Google, and restaurant owners. *Id.*, ¶¶ 36-39.

At bottom, the Complaint need only enable qMenu to know what is alleged against it, which it has done. *D 56 v. Berry's*, 1996 WL 252557 (N.D. Ill. May 10, 1996) (denying motions to dismiss and for more definite statement regarding plaintiff's claims for deceptive business practices laws). Plaintiffs have sufficiently alleged that qMenu intended to deceive consumers, individual restaurant members of the proposed class, and Google into believing that qMenu was authorized to link its hastily and shoddily created food ordering website to a restaurant's GMB listing as the preferred and authorized platform for taking delivery orders during the pandemic. This illegal hijacking of GMB listings and replacing functional ordering sites by CMO with defective and inoperative websites by qMenu deceived consumers and caused Plaintiffs to suffer great monetary loss. The Complaint sufficiently states a claim of unfair competition under 15 U.S.C. §1125(a), and in turn, qMenu's Motion should be denied.

2.      **Plaintiffs Have Pled Facts Sufficient To Sustain Their Claim Under the ICFA.**

Plaintiffs adequately alleged an unfair and deceptive practices claim based on qMenu's exploitative scheme having violated the Illinois Consumer Fraud and Deceptive Business Practices

Act ("ICFA"). Under 815 ILCS 505/2, it is unlawful to engage in "unfair or deceptive acts or practices." Hence, "recovery may be had for unfair as well as deceptive conduct." *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 804 (1st Dist. 2006) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002)); *see also Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1025 (N.D. Ill. 2007) ("recovery may also be had under the Act for conduct that is unfair").

The elements of a claim under ICFA are: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce." *Robinson*, 201 Ill. 2d at 417. Further, when examining whether a practice is unfair, courts consider the following: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Id.* at 417-18 (alteration in original); *see also Pappas*, 363 Ill. App. 3d at 804. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Gros*, 525 F. Supp. 2d at 1025.

qMenu's Motion fails to challenge the sufficiency of Plaintiffs' allegations as respects any specific element of the ICFA, but rather, generally asserts Plaintiffs fail to sufficiently state a claim. Plaintiffs have specifically identified both deceptive and unfair acts by qMenu. Complaint, ¶¶ 63-71. First, after identifying the ability to takeover GMB listings that were already claimed by either proposed class members, such as Happiness, or CMO, qMenu seized the listings for its own control. *Id.*, ¶¶ 24-27, 64-68. Second, qMenu's acts directly impacted Happiness, proposed class members, and ultimately the general public in the midst of a global pandemic. *Id.*, ¶¶ 25-30. Third, qMenu exacerbated the effects of the severe economic downturn caused by the COVID-19 pandemic by causing confusion following its seizure of GMB listings, rendering functioning websites nonfunctional and otherwise misappropriating orders and funds. *Id.*, ¶¶ 27-29. All of this deceptive conduct may fairly

be characterized as offending public policy; being immoral, unethical, oppressive, or unscrupulous; and causing substantial injury to consumers.

      **3.    Plaintiffs Have Properly Pled a Claim for Violations under the Georgia Fair Business Practices Act.**

qMenu argues Plaintiffs' claims under the Georgia Fair Business Practices Act ("GFBPA") must be dismissed because Plaintiffs lack standing. qMenu's arguments fail as to both Plaintiffs.

      **a.    CMO Has Standing To Sue.**

qMenu's sole argument that CMO lacks standing is that GFBPA claims are limited to activities "… in the conduct of consumer transactions and consumer acts or practices in trade or commerce…." *State of Georgia v. Meredith Chevrolet, Inc.*, 145 Ga. App. 8, 12 (1978); ECF Doc. No. 18 at 10. qMenu is incorrect.

The GFBPA prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions[,] and consumer acts or practices in trade or commerce are declared unlawful." Ga. Code Ann. §10-1-393(a). While "consumer" is defined as "a natural person," Ga. Code Ann. §10-1-392(a)(6), the term "consumer" modifies the type of transactions and practices that are actionable, not the type of plaintiff that has standing. Importantly, the GFBPA provides that "[a]ny person who suffers injury or damages … as a result of consumer acts or practices in violation of this part, … or whose business or property has been injured or damaged as a result of such violations may bring an action[.]" Ga. Code Ann. §10-1-399(a).

The GFBPA is intended "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce, including passing off goods or services as those of another, or causing actual confusion as to the source, sponsorship, approval, or certification of goods or services." Ga. Code Ann. § 10-1-391(a); *Inkaholiks Luxury Tattoos Georgia, LLC v. Parton*, 324 Ga. App. 769, 770 (2013) (finding that the GFBPA "protects businesses from unfair or deceptive practices in the conduct of trade or commerce," where actual consumer confusion

existed); *Abbasi v. Bhalodwala*, 149 F. Supp. 3d 1372, 1379-80 (M.D. Ga. 2015). While the GFBPA does not provide business entities with a cause of action for a competitor's misrepresentations to the general consuming public, the Georgia Supreme Court has stated, "if a business, as a consumer, sustains damage, it may bring suit under OCGA §10-1-399(a)." *Friedlander v. PDK Labs, Inc.*, 266 Ga. 180, 180 (1996) (citing Ga. Code Ann. §§10-1-391(a), 10-1-392(a)(7)).[1]

As explained above in Section A.2., *supra*, CMO sufficiently alleged that qMenu's conduct is deceptive because qMenu passes off its food ordering websites as authorized or the official website linked to a restaurant's GMB listing, whereinfact the authorized websites are the ones created and administered by CMO. Plus, CMO alleged that qMenu caused actual consumer confusion as far as consumers' belief that the individual restaurants (who may also be members of the putative class) sponsor, approve, or certify that they authorize qMenu's online ordering website, or at least the link from the GMB listing to the qMenu online ordering website. Accordingly, CMO has sufficiently stated a claim under the GFBPA, and qMenu's Motion should be denied.

### b. Happiness Has Standing To Sue. It Also Sufficiently Pled Reliance.

qMenu argues Happiness "may" lack standing to bring this claim under the GFBPA because it is neither a Georgia resident nor has it suffered any injury in the State of Georgia. Georgia case law indicates otherwise. Indeed, a Georgia district court in *In re Arby's Restaurant Group Inc. Litig.* ("Arby's I"), 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018), rejected an argument highly similar to the one by qMenu, noting: "Arby's has not cited any authority to support its assertion that a non-Georgia resident lacks standing to sue for violations of the Georgia Fair Business Practices Act by a Georgia corporation." *See, Arby's I*, 2018 WL 2128441 at *17 (the GFBPA "further provides a right of action

---

[1] The January 22, 1996 *Friedlander* holding preceded the Georgia General Assembly's amendment of the definition of "consumer", limiting "consumers" to "natural persons," which the State of Georgia Governor signed on April 15, 1996, and which had an effective date of July 1, 1996. *See Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt.*, 95. F. Supp. 3d 886, 908 (D. MD 2015).

to [a]ny person who suffers injury or damages as a result of ... consumer acts or practices in violation of this part").

To assert a claim under the GFBPA, the complaint must allege: (1) a violation of the GFBPA, (2) causation, and (3) injury. *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1289 (N.D. Ga. 2018). A plaintiff must also plead reasonable reliance. *Id.* The GFBPA does not require Rule 9(b) pleading because notice pleading is sufficient. *See, Arby's I*, 2018 WL 2128441 at *20; *Stroman v. Bank of Am Corp.*, 852 F. Supp. 2d 1366, 1381 (N.D. Ga. 2012) (applying the heightened particularity requirement to claim of common law fraud but not to claim under GFBPA).

While Happiness is a corporation organized under the laws of Illinois with a principal place of business in Chicago, Illinois (Complaint, ¶ 4), the nexus between Happiness and Georgia is directly related to qMenu's outward actions that brought Happiness' commerce from Illinois to Georgia. When qMenu seized Happiness' GMB listing and online ordering through qMenu's own platform, Happiness was unknowingly engaged in Georgia commerce. The Complaint makes clear that qMenu was managing the GMB listing and online ordering platform from its principal place of business in Georgia. Further, qMenu has alleged that "virtually all of the alleged act[s] or omissions forming the basis of Plaintiffs' claims took place" in Georgia. ECF Doc No. 16, pp. 2, 4, 7 ("the key issues and facts that will need to be addressed and developed by both Plaintiffs and qMenu in this litigation all center around acts or omissions that primarily took place in and around Gwinnett County, Georgia"). qMenu's actions, namely, orchestrating an unauthorized takeover of Happiness' online identity for its own economic gain resulted in damages. The same is true for members of the proposed class. As such, Happiness has standing to sue.

qMenu's reliance argument fares no better. As an initial matter, qMenu is correct that Plaintiffs are not required to plead a GFBPA claim with heightened particularity. *See Arby's I*, 2018 WL 2128441

at *20. Consequently, qMenu ostensibly concedes that Plaintiffs' notice pleading has put it on notice of the parameters of its GFBPA claim and what must be proven through discovery.

qMenu still states that Plaintiffs fail to plead reliance, but then cites directly to the Complaint's paragraph on reliance. Complaint, ¶ 77. The reliance by Happiness and those similarly situated stems from qMenu's scheme. When qMenu engaged in unfair and deceptive practices to wrest control over the injured restaurants' GMB listings and online ordering websites, the injured restaurants became reliant on qMenu's unauthorized management at a crucial time when they needed to provide delivery and pickup services because they had no other source of revenue. *Id.*, ¶¶ 73-74. As consumers, restaurants such as Happiness unwillingly relinquished control of their online presence and were totally reliant on qMenu by virtue of its domain over the restaurants' GMB listings, the core of their online ordering strategy and availability to the general public. *Id.*, ¶ 77. Accordingly, the Complaint meets the standard for sufficiently pleading a claim under the GFBPA and, in turn, qMenu's Motion should be denied.

### 4. The Complaint Sufficiently Pleads Claims for Tortious Interference with Contract and Tortious Interference with Prospective Economic Advantage.

qMenu presents a single argument for dismissal of CMO's claims for tortious interference with contract (Count II) and tortious interference with prospective economic advantage (Count III). The crux of qMenu's argument is that CMO has not asserted sufficient facts to plead those causes of action. Instead of accepting the Complaint's allegations as true, qMenu's motion regarding the tortious interference counts ignore or mischaracterize Plaintiff's sufficiently pled allegations. CMO addresses qMenu's argument as to each cause of action in turn.

#### a. CMO's Tortious Interference with Contract Claim.

To state a claim for tortious interference with contract under Illinois law, a complaint must allege: "(1) a current contract was in force and effect between the plaintiff and another party; (2) the

defendant induced the breach of such contract, or caused a third party not to perform a contract; and (3) the interference must be intentional, causing a contract breach or termination."[2] *Exch. Nat'l Bank v. Farm Bureau Life Ins. Co. of Michigan*, 108 Ill. App. 3d 212, 214 (3d Dist. 1982). The Complaint adequately pleads each of these elements.

In support of Count II, CMO succinctly states that it had maintained contracts, both oral and written, with restaurants to manage their GMB listings and websites in exchange for commissions on customer orders taken through the websites created by CMO. Complaint, ¶¶ 22, 43. It then alleges that qMenu induced a breach of the contracts by improperly gaining access to GMB listings and online ordering websites of the injured restaurants. *Id.*, ¶ 25-28. As a result of qMenu's takeover, CMO alleges that qMenu controlled the GMB listings and online ordering websites – the exact service that CMO had contracted with restaurants to manage. *Id.*, ¶¶ 22, 43. CMO next alleges that qMenu's actions were intentional, and may still be intentionally occurring, as qMenu deliberately exploited restaurants' private information by surreptitiously accessing their confidential login information. *Id.*, ¶ 24. qMenu's obfuscation of what is intended to be a simple online referral and ordering system has caused significant contractual damages stemming from the harm qMenu caused to CMO's relationship with each of its affected clients. *Id.*, ¶¶ 43-49.

In support of its position, qMenu relies on *Griggs v. Robinson Securities*, 1985 WL 1163 (N.D. Ill. May 9, 1985), for the position that CMO's claim must be dismissed for failure to identify the contract interfered with, or when the interference took place. However, qMenu's reliance on *Griggs* falls short, as *Griggs* is easily distinguished from the facts before the Court. In *Griggs*, the court dismissed the plaintiff's claim for tortious interference with contract for deficient pleading, but found the situation

---

[2] Georgia courts recognize that the elements of tortious interference with contract are "the existence of a valid contract and that the defendant acted intentionally, without privilege or legal justification, to induce another not to enter into or continue a business relationship with the plaintiff, thereby causing the plaintiff financial injury." *Brathwaite v. Fulton-DeKalb Hosp. Auth.*, 317 Ga. App. 111, 113 (2012). It is thus apparent that there is no conflict of laws between Georgia and Illinois law as respects this cause of action. As such, Plaintiffs cite to Illinois law herein.

unique, as the complaint was initially filed *pro se* and, since that time, the plaintiff had retained counsel. 1985 WL 1163, at *6. Consequently, the court dismissed the tortious interference with contract claim without prejudice to allow the retained counsel to amend the complaint to meet the liberal pleading standards. *Id.* ("We expect the amended complaint, if filed, to meet the liberal pleading standards set forth in Fed. R. Civ. P. 8."). That is not the case here.

At the initial pleading stage, CMO's allegations are sufficient to put qMenu on notice that it directly interfered with CMO's business relationships, *i.e.*, the written or oral agreements CMO had with its restaurant clients to manage their GMB listings and the websites linked to those listings. Accordingly, CMO has properly asserted a claim for tortious interference with contracts, and in turn, qMenu's Motion should be denied.

> **b.** **Plaintiffs' Tortious Interference with Prospective Economic Advantage Claim Satisfies All Required Elements.**

Under Illinois law,[3] the elements of tortious interference with prospective economic advantage are: (1) that the plaintiff had a reasonable expectation of entering into a valid business relationship, (2) that the defendant knew of this expectancy, (3) that he or she purposefully interfered to prevent the expectancy from being fulfilled, and (4) that damages to the plaintiff resulted from the interference. *Cook*, 141 F.3d at 327 (denying motion to dismiss tortious interference claim).

Much like CMO's claim for tortious interference with contract, qMenu's argument fails because the Complaint sufficiently alleges facts to put qMenu on notice of the claims. Indeed, this case is similar to *Cook*, where the district court had dismissed a tortious interference with prospective economic advantage claim, reasoning that because the plaintiff failed to identify any particular third

---

[3] Georgia recognizes an analogous cause of action for tortious interference with potential business relations, the elements of which are: "(1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant … caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff." *Crane v. Albertelli*, 264 Ga. App. 910, 912 (2003).Like Count II, it is apparent there is no conflict of laws between Georgia and Illinois law as respects Count III. As such, Plaintiffs cite to Illinois law herein.

party with whom he had a reasonable expectation of a business relation, the pleading was sufficient.

But, the Seventh Circuit reversed, initially explaining:

> The district court dismissed this count because it read Illinois court decisions as requiring that the plaintiff allege both "a business expectancy with a specific third party" and "action by the interfering party directed towards the party with whom the plaintiff expects to do business." … Because [plaintiff] did not name any particular third party with whom he had a reasonable expectation of a business relationship, or toward whom [the defendant] directed her interfering actions, the court concluded that the complaint was inadequate.

141 F.3d 327-28 (internal citations omitted). The Seventh Circuit then went on to explain why the plaintiff's allegations were compliant with the federal notice pleading rules:

> But this entire argument strays rather far afield from the minimal requirements of federal notice pleading. Having alleged that Winfrey improperly interfered with his "ability to enter into contracts or business relationships with third parties interested in purchasing the rights to publication of his experiences" …, Cook is under no obligation to plead further the facts that he believes support his claim.
>
> * * *
>
> The Federal Rules do not require that his complaint allege the specific third party or class of third parties with whom he claims to have had a valid business expectancy. He has alleged that such an expectancy existed and that [plaintiff] purposely interfered with it. Consistent with those allegations, he might be able to prove a set of facts (including the identity of the parties or class of parties) that would entitle him to relief.

*Id.* at 328.

qMenu's argument fails that it "is left to guess as to the identity of contracts with which it allegedly interfered." Courts routinely find that allegations like those made by Plaintiffs are sufficient to plead a tortious interference with prospective economic advantage claim. *See, e.g., Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 712 (N.D. Ill. 2006) (finding that pleading "outstanding interstate reputation" among targeted group was sufficient to allege "a reasonable expectancy to enter into future business relations"); *Rossi Distribs., Inc. v. Lavazza Premium Coffees Corp.*, 2002 WL 31207324, at *3 (N.D. Ill. Oct. 2, 2002) (finding tortious interference with prospective economic advantage claim was sufficiently pleaded even though the plaintiff did not identify specific

clients that had been lost). Additionally, CMO has alleged that it had legitimate existing and prospective relationships with restaurant clients, albeit without a contract, qMenu's interference diverted such relationships away from CMO through qMenu's deceptive actions, and qMenu's actions were intended to directly interfere with such expectant business relationships. *Id.*, ¶¶ 51-53. At the pleading stage, these allegations are sufficient. *Owens Trophies, Inc. v. Bluestone Designs & Creations, Inc.*, 2014 WL 126082, at *4 (N.D. Ill. Jan. 14, 2014) (denying motion to dismiss as to tortious interference with prospective economic advantage claim where allegations supported inference that the customer would continue to do business with plaintiff but-for defendant's conduct). Hence, the Complaint properly states a claim for tortious interference with prospective economic advantage.

### 5. Federal Law Permits the Pleading of Unjust Enrichment Claims in the Alternative.

To assert a claim for unjust enrichment, the plaintiff must allege that the defendant voluntarily accepted a benefit which, under the circumstances, would be inequitable for him to retain without compensation. *Skinner v. Shirley of Hollywood, a Div. of Nat. Corset Supply House*, 723 F. Supp. 50, 55–56 (N.D. Ill. 1989) (declining to dismiss unjust enrichment claim based on appropriation of customer lists and goodwill without payment, notwithstanding alternative claims for breach of contract). Plaintiffs' allegations, including that qMenu appropriated CMO's goodwill to the detriment of CMO's relationships with its restaurant clients, meet these requirements. *See* Complaint, ¶¶ 83-85.

qMenu argues the unjust enrichment claim must be dismissed because under Illinois law, where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, … the unjust enrichment claim … will stand or fall with the related claim." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). However, a plaintiff is not prevented from bringing an unjust enrichment claim in the alternative. Both the FRCP and Illinois law are clear that a party may plead alternative counts. Fed. R. Civ. P. 8(e)(2); *Cole-Haddon, Ltd. v. Drew Philips Corp.*, 454 F. Supp. 2d 772, 777 (N.D. Ill. 2006) (parties may state claims in the alternative even if the claims are contradictory);

*Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2004 WL 3363844, at *16 (N.D. Ill. Dec. 28, 2004) (upholding unjust enrichment claim pled in the alternative to a contract). Plaintiffs may thus plead their unjust enrichment claim in the alternative because should their legal claims fail due to technical reasons, they may still recover under an equitable cause of action that qMenu's improper conduct allowed it to collect and retain funds from its nefarious scheme. *See Cleary*, 656 F.3d at 516-20. Given that dismissal of Plaintiffs' alternatively pled unjust enrichment claim would be grossly premature, qMenu's motion to dismiss the unjust enrichment claim should be denied.

### B.  qMenu's Motion To Strike Plaintiffs' Request for Class Relief Is Improper.

qMenu argues this Court should dismiss the class allegations in the Complaint because qMenu believes the proposed class members cannot satisfy the requirements under Rule 23. However, arguments against class certification are best left for the class certification stage and typically are not proper for a motion to dismiss.

qMenu's argument to strike the class allegations is premature and disfavored, as it places a burden on a plaintiff to demonstrate that the prerequisites for class certification are met well before the time prescribed by the FRCP. *Palmer v. Combined Ins. Co. of Am.*, 2003 WL 466065, *6 (N.D. Ill. Feb. 24, 2003) ("it is entirely possible that everything that [defendant] has argued is true and that class certification is doomed to fail. However, the pleadings alone do not prove this, and at this early stage in the case, [the plaintiff] is entitled to a shot at proceeding with the class action."). Moreover, qMenu's motion to strike is unreasonable, as it burdens Plaintiffs to identify class members with particularity well before the appropriate discovery has been completed, as discovery will assuredly reveal the putative class members qMenu injured. *Power v. GMAC Mortg. Corp.*, 2007 WL 723509, *5 (N.D. Ill. Mar. 7, 2007) ("The gist of Defendants' arguments in this motion is that the class claims are ill-suited to resolution as a class, not that no conceivable set of facts could lead to relief. These considerations are best resolved after crystallization in a fully developed motion for class certification under Fed. R.

Civ. P. Rule 23."). In fact, this Court has routinely held that dismissal of class action claims prior to discovery is premature. *Delise v. Fed. Express Corp.*, 2001 WL 321081, *2 (N.D. Ill. Mar. 30, 2001) ("The court is not prepared at this juncture (before any discovery on the class allegations or a motion to certify) to dismiss plaintiff's class allegations.").

Here, Plaintiffs have alleged all of the required elements of a class action. Plaintiff Happiness seeks to represent a class of what should be thousands of restaurants whose GMB listings were directly interfered with by qMenu without owner consent or authorization. Complaint, ¶ 10. Plaintiff Happiness has not been able to conduct discovery yet and, therefore, the numerosity of the class is known only by qMenu, although Plaintiffs are aware of hundreds of putative class members. *Id.*, ¶ 12. qMenu's argument that the class is unascertainable will only be refutable, or known, following a period of discovery to obtain the names of each individual member of the proposed class adversely affected by qMenu's scheme. *Id.*, ¶¶ 12-13. At the initial pleading stage, a brief in support of class certification that particularizes the class action claims following discovery has not yet been prepared; Plaintiffs are entitled to an opportunity to plead their class action claims first to place qMenu on notice and proceed with discovery. *Palmer* 2003 WL 466065 at *6. Therefore, qMenu's premature arguments against class certification should be denied and addressed during the class certification stage of this case.

### C. qMenu Waived Other Arguments Concerning the Sufficiency of the Claims Alleged in the Complaint.

Plaintiffs have addressed each of qMenu's arguments. Any additional arguments not asserted in qMenu's Motion have been waived. *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998) ("Arguments raised for the first time in a reply brief are waived."). A defendant seeking dismissal of claims pursuant to Rule 12(b)(6) must set forth all challenges to the sufficiency of the pleading in its opening memorandum; arguments may not be withheld and raised for the first time in a reply brief. *Petri*, 997 F. Supp. at 977 ("To dismiss the complaint on the basis of these new arguments would be patently unfair.").

**D.** **Should the Court Determine That Plaintiffs' Claims Are Insufficiently Pled, Plaintiffs Request the Right to Amend.**

In the event the Court determines Plaintiffs have not met the liberal pleading requirements, Plaintiffs respectfully request the opportunity for leave to amend their Complaint. "Ordinarily ... a plaintiff whose [claim] has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend…." *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)). Allowing amendment early in these proceedings would not be prejudicial to qMenu, as Plaintiffs have not acted in bad faith, and there has been no showing that amendment would be futile. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 358 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

**IV.** **CONCLUSION**

Based on the foregoing, it is respectfully submitted that Defendant QMenu, Inc.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) should be denied, along with such further relief as this Court deems just and proper.

DATE: June 7, 2021        Respectfully submitted,

**GOLDBERG SEGALLA LLP**

By: */s/ Larry D. Mason*
One of the Attorneys for Obento Limited dba Chinese Menu
Online and P&F, Inc. dba Happiness Restaurant, on behalf
of itself and all others similarly situated

Jonathan L. Schwartz (ARDC #6287338)
Larry D. Mason (ARDC #6201602)
GOLDBERG SEGALLA LLP
*Mailing Address:* P.O. Box 957, Buffalo, NY 14201
*Physical Address:* 222 W. Adams St., Suite 2250, Chicago, IL 60606
(312) 572-8411
jschwartz@goldbergsegalla.com
lmason@goldbergsegalla.com

## <u>CERTIFICATE OF SERVICE</u>

To:     All Counsel of Record

    I hereby certify that on June 7, 2021, I electronically filed **Plaintiffs Obento Limited and P & F, INC. d/b/a Happiness Restaurant's Opposition to Defendant's Motion to Dismiss the Complaint and to Strike Class Allegations** with the United States District Court – Northern District of Illinois, Eastern Division by using the CM/ECF system.

                                            */s/ Larry D. Mason*

Jonathan L. Schwartz (ARDC #6287338)
Larry D. Mason (ARDC #6201602)
GOLDBERG SEGALLA LLP
**Mailing Address:** P.O. Box 957, Buffalo, NY 14201
**Physical Address:** 222 W. Adams St., Suite 2250, Chicago, IL 60606
(312) 572-8411
jschwartz@goldbergsegalla.com
lmason@goldbergsegalla.com

30068108.v4